STATE OF MISSOURI, Respondent, v. WILLIAM P. SULLIVAN, Appellant.

Kansas City Court of Appeals, December 19, 1904.

1. **INDICTMENT: Grand Jury: Prosecuting Attorney: Attorney-General: Statutory Construction.** When the Attorney-General is called by the Governor under section 4940, Revised Statutes 1899, to aid the prosecuting attorney, he has the same rights and duties in regard to the grand jury that the prosecuting attorney has and may be present before them to give advice and examine witnesses; and the fact that he does so without objection from the jury will imply their consent thereto.

2. ———: ———: ———: ———: ———. The fact that the circuit judge, prosecuting attorney and grand jury may request the Governor to order the Attorney-General to aid the local prosecutor can only give emphasis to the necessity, but is unnecessary to the exercise of such power by the Governor.

3. ———: ———: **Stenographer: Harmless Error: Statutory Construction.** The whole framework of the grand jury's organization and the safeguard of secrecy in its deliberations excludes the idea that anyone save the officers especially mentioned may sit in its presence or aid in the performance of its duties; and the presence of a stenographer, though a court official, and sworn to keep secret the proceedings, is a manifest impropriety, however pressing may be the necessity therefor; but though improper and irregular such fact does not avoid the action of the jury unless it appear that the defendant was harmed or prejudiced thereby.

State v. Sullivan.

4. ———: ———: Absence of Member. It can make no difference to defendant that a juror was absent at a time when defendant and the charge against him were not under consideration.

5. BRIBERY: Common Law: Legislator. It was an offense at common law, to bribe or attempt to bribe a legislative officer.

6. ———: Solicitation of: Common Law: Misdemeanor. While there is no statute on the subject, yet to solicit a bribe is a misdemeanor under the common law in force in this State.

7. ———: Common Law: Felony: Misdemeanor. At common law to bribe a judicial officer is a felony, but it is in doubt whether it was a felony or misdemeanor to bribe other officers.

8. ———: Solicitation of: Common Law: Misdemeanor. Any unlawful step necessary or useful towards committing a misdemeanor when willfully taken, is a misdemeanor; and the soliciting of a bribe is a step—an act, and not a mere desire—toward the commission of an offense, and, therefore, is a misdemeanor.

9. ———: ———: ———: Felony: Misdemeanor. To accept a bribe is a felony under the statute of Missouri, and to solicit the commission of a felony is at common law a misdemeanor; in this State the statute makes it a felony to bribe a legislative officer, and a senator who solicits a bribe commits a common-law misdemeanor.

10. APPELLATE AND TRIAL PRACTICE: Weighing Evidence: Jury. The issue or guilt is not triable in the appellate court, but must be determined by the jury; the trial court, having a better opportunity to weigh the evidence, is intrusted with far greater discretion than the appellate court, which can alone determine whether there is substantial evidence to support the verdict.

11. BRIBERY: Evidence. The evidence relating to the solicitation of a bribe by a State senator is considered and held sufficient to send the question to the jury and to support a verdict of guilty.

Appeal from Cole Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*W. S. Pope* for appellant.

(1) The case of People v. Walsh, 65 Ill. 58, is relied upon by the State in this case. It decides that

soliciting a bribe is a misdemeanor at common law, and punishable as such; but it further decides that where a defendant was convicted upon the unsupported testimony of a single witness, who was impeached, and shown to have been actuated by great personal hostility to defendant, a person of good character, the conviction could not stand. (2) The defendant in this case was convicted on the unsupported testimony. of Whitney Layton, whose mission here was to secure the passage of a bill favorable to his interests. He is contradicted by the defendant, Senator Smith, Emmet Newton, and others, and from his own testimony. we gather that he was not in Jefferson City, without the means, as well as the inclination to secure favorable legislation by unclean methods. (3) There are two other cases bearing upon this question, to which the attention of the court is called, viz.: State v. Ellis, 33 N. J. L. 102; Hutchinson v. State, 36 Texas 293. The statutes of Illinois leave the common law in that State in about the same condition as in Missouri. (4) At the time of the settlement of this country, by the English (4th year, of reign of James I.), there was no law punishing anyone for bribery, except judges, and that was only as a misdemeanor. This was not called to the attention of the Illinois court, nor considered by it in its opinion. (5) The law of England punishing soliciting a bribe by members of Parliament was not enacted until the reign of Victoria, the latest and most comprehensive enactment on the subject being 52 and 53 Victoria, c. 69, sec. 1. Enactments since the fourth year of the reign of James I., are not a part of the common law here. Estate of Wm. G. Williams, 62 Mo. App. 346.

*Edward C. Crow,* Attorney-General, for respondent.

(1) The allegations in the indictment above mentioned are sufficient and the indictment is a legal

charge.    State v. Graham, 96 Mo. 120; State v. Bie-
bush, 32 Mo. 276; 3 Ency. of Pl. and Prac., 100, 101,
696, 699; 25 Mich. 50; 3 Chitty, Criminal Law, 992; 29
Ind. 20; 9 Allen (Mass.) 274; 37 Mich. 118; 4 Hill
(N. Y.) 133; 54 Pa. St. 210; 1 McCord (S. Car.) 31;
Rex v. Higgins, 2 East 5.    (2)    Right of Attorney-
General to go before grand jury.    R. S. 1899, sec.
4940.    (3)    Right of stenographer to be in grand
jury room.    U. S. v. Simmons, 46 Fed. 65; 148
Ind. 610; 5 Ind. App. 356; 70 Vt. 341.    (4)    Solicitation
to commit some crimes is of itself a substantive crime.
Cox v. People, 82 Ill. 191; State v. Bower, 15 L. R. A.
199; Rex v. Higgins, 2 East 5.    (5)    Is solicitation of a
bribe an offense in Missouri?    R. S. 1899, secs. 4151,
4152; King v. Higgins, 2 East R. P. 5; Young's case
cited in 2 East R. P. P. 14 and 16; Bishop's Criminal
Law, secs. 84-89, and notes; 97 Am. Dec. 709; 1 Bishop's
New Criminal Law (8 Ed.), sec. 767; Walsh v. People,
65 Ill. 58; U. S. v. Worll, 2 Dallas 384; Heffelton v.
Solicitor, Cook, 88; 2 Bishop's New Criminal Law,
secs. 88 and 89; 1 Bishop's Criminal Law (8 Ed.), secs.
768a, 768b, 768c and 768d.    (6)    It must be accepted
as true that bribery of others than a judge or those
connected with the administration of the law, was an
offense at common law.    This being so, it certainly is
an indictable offense at common law for one to solicit
a bribe.    Com. v. Flagg, 135 Mass. —; Walsh v. People,
65 Ill. 58; Rex v. Vaughn, 4 Bunower R. P. 2494; King
v. Higgin, 2 East R. P. P. 14 and 16; 2 Bishop's New
Criminal Law, sec. 87; State v. Hayes, 78 Mo. 307; 74
Mo. 24; 101 Mo. 471.    (7)    Bribery is crime classed as
a felony in Missouri.    A solicitation to commit brib-
ery is an offense.    State v. Hayes, 78 Mo. 316; Com.
v. Jacobs, 9 Allen 274; People v. Bush, 4 Hill 133; King
v. Higgins, 2 East 5; 1 Bishop's Criminal Law, sec.
767; 25 L. R. A. 434; State v. Avery, 7 Conn. 266; Com.
v. Randolph, 146 Pa. St. 83; Rex v. Higgins, 2 East 5;
Com. v. Randolph, 146 Pa. St. 95; 1 Chitty's Criminal

Law, sec. 768; State v. Hayes, 78 Mo. 316. (8) Dif-
ference between Missouri and Texas statutes. The
case cited in 36 Texas 293, is not in point, because of
Penal Code, c. 1, art. 3 of Texas. R. S. 1899, sec. 4151.
The courts of Missouri hold that common law offenses
are indictable in our State. State v. Snyder, 44 Mo.
App. 430; 80 Mo. 454. (9) Similarity of Missouri and
Illinois statutes. The case of Walsh v. People, 65 Ill.
58, is expressly in point here. The statutes of Illinois
as to the common law are almost identical with our
own. (10) The verdict is sustained by the evidence.
74 Mo. App. 627, 152 Mo. 257.

ELLISON, J.—The defendant, being a member of
the Missouri State Senate, was indicted, tried and con-
victed on the charge of soliciting a bribe for his vote
as a Senator on a bill then pending in the Senate. A
change of venue from Judge Hazell, judge of the circuit
court of Cole county, was taken and the case was tried
in that county by Judge H. C. Timmonds of the Twenty-
sixth circuit. Defendant appealed to this court.

On its face, we regard the indictment as well
drawn. It sets forth in plain language the official posi-
tion of defendant, the pendency in the Senate of the
legislative bill and of defendant's duty to act thereon.
It charges from whom he solicited the bribe and the
amount thereof, and the official action he would take
on the bill if the sum mentioned was paid him. The
venue and all other technical requirements were prop-
erly charged and we discover nothing to justify a crit-
icism.

There was, however, objection made to the indict-
ment by way of a plea in abatement wherein it was
stated that the cause should be abated on the ground,
first, that the Attorney-General of the State appeared
before the grand jury while it was considering whether
a bill of indictment should be found; second, that a
stenographer, not a member of the jury, was permitted

to attend the session of the jury and take stenographic notes of the evidence heard in the consideration of whether a bill should be found; third, that one of the members of the grand jury was absent during the time the jury had under investigation the charge against defendant; and that said juror returned and voted to find the present bill on information of what the evidence was which he received from other members of the jury and the stenographer.

An answer to this plea was filed by the State in which it was admitted that the Attorney-General and also a stenographer were present at different times with the grand jury while the present bill was under consideration; that the Attorney-General assisted in the examination of witnesses and the stenographer made notes of the evidence heard, but that neither of them took part in the deliberation of the jury, nor were they present when the jury voted to find the bill.

The defendant demurred to the answer on the ground that it showed no defense to the plea in abatement. The trial court overruled the demurrer and the plea; whereupon the cause proceeded to trial which, as before stated, resulted in a verdict of guilty.

2. In considering the demurrer to the State's answer we must assume the allegations of such answer to be true. We have just stated that those allegations admitted the Attorney-General's attendance on the session of the grand jury. But the answer further alleged that his acts were justified and were legal and proper by virtue of the act of the Governor taken under the statute (section 4940, Revised Statutes 1899) which reads as follows: "When directed by the Governor, he (the Attorney-General), shall aid any prosecuting attorney in the discharge of his duties." It was further alleged that the following communication was signed by James E. Hazell, judge, by R. P. Stone, the prosecuting attorney, and the members of the grand jury, viz.:

"Jefferson City, Mo., March 31, 1903.

"Hon. A. M. Dockery, Governor: Dear Sir:—We, the judge, prosecuting attorney and grand jury of Cole county, respectfully ask that you request Hon. E. C. Crow, Attorney-General, to assist the jury in its investigations in boodling, etc."

That in pursuance of such request, the Governor gave the following written order or direction to the Attorney-General:

"St. Louis, April 1, 1903.

"Hon. E. C. Crow, Attorney-General, Jefferson City, Mo.: The circuit judge, prosecuting attorney and grand jury of Cole county having requested your service, under the authority of section 4940 of the Revised Statutes, I hereby direct you to aid the prosecuting attorney of Cole county in the discharge of his duties. A. M. Dockery, Governor."

In the case of State v. Hays, 23 Mo. 287, James B. Gardenshire, Esq., then Attorney-General, appeared at the trial assisting the circuit attorney in the prosecution. He did so at the circuit attorney's request and with the consent of the trial court, though without an order from the Governor; and it was held that he had the right, on such request and consent, notwithstanding there was no direction from the Governor.

That, however, was taking part in the case in open court, under the eye and protection of the court and where the proceedings are open to the public, and where secrecy concerning any movement in the case is not tolerated. While the proceedings in which the Attorney-General took part in this case were before the grand jury where the conditions are different and where the law, for good reasons, enjoins secrecy, and where only certain designated persons, outside the members of the jury, ought to go. But the organization of the grand jury, its proceedings and the duty of dif-

ferent officers of the State in aid of its functions are regulated by law, and we have set out the statute which makes it become the duty of the Attorney-General, when directed by the Governor, to assist the prosecuting attorney in the discharge of his duties. Among the duties of the latter, is that of attendance on the grand jury, to aid in the examination of witnesses and to advise the jury concerning any matter before it. It is true the statute (section 2496) makes it the duty of the prosecuting attorney to examine witnesses and give advice when required by the grand jury, and there was no express showing that the grand jury made such request of the prosecuting attorney. It is not necessary that there be a formal request and it is not the practice to require it. The fact that he does so without objection from the jury will imply their being willing. Besides, the grand jury did expressly request that the Attorney-General assist in the investigation. It undoubtedly follows that upon the action of the Governor it became the right and the duty of the Attorney-General to perform the acts of which the defendant complains. The request of Judge HAZELL, the prosecuting attorney and the grand jury was not necessary or requisite to the power of the Governor, but such request emphasized the necessity for his action and justified an exercise of the authority with which he is invested by the statute. We rule the point against defendant.

The answer to the plea in abatement not only admits that a stenographer was present with the jury during its deliberations and took down the testimony of witnesses, but it alleges that he was the court stenographer and a sworn officer and that in addition he was sworn by the foreman not to divulge any matters transpiring before the jury. It was furthermore alleged that he was not present when the jury were deliberating or voting on the indictment, and that the presence and action of such stenographer did not in any manner operate to the prejudice of the defendant.

The grand jury is known to the law as a secret body and every safe-guard has been adopted, consistent with its performance of duty, to preserve the secrecy of all that takes place in its proceedings and investigations. The statute provides for an oath of secrecy to be taken by its members, that "the counsel of your State, your fellows and your own, you shall truly keep secret" (section 2489). It is the duty of the foreman to swear each witness that he will not directly or indirectly divulge the fact that the jury has had the matters of which he testifies under consideration or any other fact or thing which may come to his knowledge while before the jury (section 2490). No juror is even permitted to testify as to how he or his fellows voted or what opinions he or they expressed. Nor are they, except when lawfully required, allowed to give the name of any witness before them, nor to disclose any evidence given (sections 2507-2508). The statute does not contemplate the presence of any other person than the members of the jury and the prosecuting attorney and his assistant. Indeed, the whole framework of the jury's organization and the safeguards of secrecy thrown around it and its deliberations, excludes the idea that anyone else may sit in its presence, or aid in the performance of its duties. It is a manifest impropriety (under the present condition of legislative action) for any other person to be present. The fact that it was deemed desirable to take notes of the testimony of witnesses called before the body does not justify the employment of a stenographer (whether the court stenographer or other person) for that purpose who is not a member of the jury. This is evident, not alone from the whole framework of exclusiveness and secrecy of its organization, as well as the silence of the statute in that respect, but an affirmative provision of the statute excludes the right to introduce such person into the presence of the jury for such purpose. For it is provided (section 2495) that the jury, "may appoint

one of *their number* to be clerk thereof, to preserve minutes of their proceedings and of the evidence given before them.'' So strictly was the secrecy of the grand jury maintained that it was formerly held that a juror disclosing to an accused the evidence heard in the jury room made the juror an accessory to the crime charged. [4 Blackstone 126.]

But the impropriety and irregularity of introducing an unauthorized person into the presence of the grand jury does not *ipso facto* avoid the action of the jury. In order that such irregularity may avail the defendant, it must appear that he has been harmed or prejudiced thereby. [State v. Bates, 148 Ind. 610; State v. Brewster, 70 Vt. 341; U. S. v. Simmons, 46 Fed. Rep. 65; Courtney v. State, 5 Ind. App. 356.] The demurrer to the answer filed by the State admits the allegation of the answer that no prejudice resulted to defendant by the stenographer's presence, and it therefore follows that we must rule the point against the defendant.

The answer made by the State to that part of defendant's plea in abatement relating to the absence of one of the grand jurors admitted such absence, but alleged that the juror was not absent during the investigation and decision of defendant's case, nor during the deliberation thereon. That being true, it can make no difference to defendant that a juror was absent at a time when defendant and the charge against him were not under consideration. This makes it unnecessary for us to enter into a discussion of the question whether it is required that the full panel of twelve jurors be present though nine may find a true bill of indictment.

By a motion in arrest of judgment defendant brought up the question whether soliciting a bribe was an offense under the laws of Missouri. It is stated by defendant that bribery of anyone other than a judicial officer was not an offense at common law. That therefore if bribery of a legislative officer was not an offense the solicitation to be bribed, of course, could not be an

offense, for the reason that if the solicitation produced the actual bribery no offense at common law would be committed. We however do not agree that the common-law crime of bribery could only be committed with a judicial officer. In an early day in England when the duties of judicial officers, especially of the petty sort, entered more closely into the every day life of the people than in later years, the motive for bribery was largely confined to the corruption of such officers; and bribery was perhaps largely confined to such officials. So the crime came to be defined by some of the old writers as, "where any man in judicial place takes any fee or pension, robe or livery, gift reward or brocage, of any person, that hath to do before him in any way, for doing his office, or by color of his office, but of the king only, unless it be meat and drink, and that of small value." 4 Blackstone 139, states: "Bribery is when a judge or other person concerned in the administration of justice takes any undue reward to influence his behavior in his office." But in point of fact, though the inducement to bribery was of rarer occurrence with other officers, yet the books show that the crime, at common law, could be committed with others, and that the foregoing definitions, if intended as exclusive, were much too narrow. [2 Bishop's Crim. Law, sec. 85, note 1.] Notwithstanding the definition given by Blackstone, that author further along states that bribery was an offense in other officers, punishable by fine and imprisonment; and that a statute of Henry the fourth included "other officers of the king" with judges as punishable for bribery. And so in Rex v. Vaughan, 4 Burr. 2494, it was held a crime at common law to attempt to bribe the Lord of the Treasury for the recommendation for an appointment to office. In Commonwealth v. Flagg, 135 Mass. 545, it was held to be an offense at common law to solicit the burning of a barn. And in Commonwealth v. Randolph, 146 Pa. St. 83, it was so held to solicit another to commit murder. We

entertain no doubt that it was an offense at common law to bribe, or attempt to bribe a legislative officer. [State v. Ellis, 33 N. J. L. 102; Wharton's Criminal Law, secs. 179, 1857, 1858.]

Though we thus find it to be an offense at common law to bribe a legislative officer, the question whether it is an offense against the common law for such an officer to solicit a bribe remains to be answered. The question received full consideration by Judge TIMMONDS who drew up in writing his conclusions and the reasons therefor, wherein it is demonstrated to our satisfaction, that while there is no statute on the subject, yet to solicit a bribe is a misdemeanor under the common law in force in this State.

While it was a felony at common law to bribe a judicial officer, it does not appear clear whether it was a felony or a misdemeanor to bribe other officers. The distinction becomes important from the fact that it is not altogether certain that soliciting one to commit a misdemeanor is a common law offense. The books leave such question in a state of uncertainty. It has been said to bribe a legislative officer is only a misdemeanor at common law, and that to solicit the commission of a misdemeanor is not an offense; that soliciting the bribe in this case was merely soliciting the commission of a misdemeanor and was therefore not a common-law offense.

While, as we have just said, doubt has been cast on the question, yet we believe that it was a common law offense to incite or solicit another to commit a misdemeanor. The English courts have uniformly held that an attempt to commit a misdemeanor was itself a misdemeanor, and was to be punished as such. Thus, it was said that an attempt to commit an act which was a misdemeanor, whether by statute or common law, was itself a misdemeanor. [Rex v. Butler, 6 C. & P. 368; Rex v. Roderick, 7 C. & P. 795.] That any one unlawful step necessary or useful towards com-

mitting a misdemeanor, willfully taken, is a misdemeanor. [Regina v. Chapman, 2 C. & K. 846.]  So an attempt to set fire to one's own house (which, if accomplished would be a misdemeanor) was a misdemeanor. [Rex v. Scofield, Cald. 397.]  And so in the celebrated case of King v. Higgins, 2 East 5, it is repeatedly stated that the attempt to commit a misdemeanor was itself a misdemeanor.

It has been at times suggested that to merely solicit the unlawful offense was not doing an act, and that the law could not notice a mere desire unaccompanied by an act.  But, manifestly, soliciting is an act.  It is a step in the direction of an offense. [State v. Hayes, 78 Mo. 316; King v. Higgins, supra; State v. Avery, 7 Conn. 267; 1 Bishop's Crim. Law, sec. 767.]  And so it may also be said that some of the foregoing cases are for attempts to commit an offense and that they therefore do not apply to a case where there has only been a solicitation; it being contended that a solicitation is not an attempt.  But it is.  For the act of soliciting is an attempt to have the offense committed.  Indeed, the case of King v. Higgins, supra, and several others, were cases of solicitation.

Text-writers have laid down the law that to solicit the commission of an offense was indictable, without noticing any distinction whether the offense solicited was a felony or misdemeanor. [Bishop on Crim. Law, supra; Wharton on Crim. Law, supra; 1 Russell on Crim. Law, 193, 194.]  These writers look only to the character of the offense in its evil tendency and not to its technical designation.  And so in a case from the Supreme Court of Illinois, much like the present save that this involves a State Senator and that an alderman in Chicago, it was held that, though there was no statute on the subject in that State, yet it was an indictable misdemeanor for an officer to propose to receive a bribe.  The court said:

"According to the well-established principles of

the common law, the proposal to receive the bribe was an act which tended to the prejudice of the community; greatly outraged public decency; was in the highest degree injurious to the public morals; was a gross breach of official duty, and must therefore be regarded as a misdemeanor, for which the party is liable to indictment. It is an offense more serious and corrupting in its tendencies than an ineffectual attempt to bribe. In the one case, the officer spurns the temptation, and maintains his purity and integrity; in the other, he manifests a depravity and dishonesty existing in himself, which, when developed by the proposal to take a bribe, if done with a corrupt intent, should be punished; and it would be a slander upon the law to suppose that such conduct can not be checked, by appropriate punishment.'' [Walsh v. The People, 65 Ill. 58.] That case had much weight with the trial judge in his consideration of the question.

We do not regard as in point the case of Hutchinson v. State, 36 Texas 293, wherein it was held that an offer of a road overseer to accept a bribe was not an offense. If the laws of that State with reference to the common law were as they are in other States we would regard the case as out of line with the overwhelming weight of authority. But by the statute of that State (chapter 1, article 3, Penal Code of Texas) only those acts are offenses which are declared to be such by the statute. The common law is thus excluded from operation.

But if we should be mistaken in the view that to solicit one to commit a misdemeanor is itself, a misdemeanor at common law, it would not affect this case. For it is certain that to solicit the commission of an offense which is a felony is a misdemeanor at common law. It can make no difference whether the offense which is solicited is made a felony by act of parliament or by the common law, it is only necessary that it be a felony, no matter how

made so.  In those jurisdictions where it prevails, the common law is a standing declaration that whoever solicits the commission of a felony is guilty of a misdemeanor.  It is not a declaration that whoever solicits the commission of an offense which is a felony at any given time shall be guilty of a misdemeanor, but it is a declaration that whoever solicits the commission of an act which is a felony at the time solicited is guilty of a misdemeanor.  In this State the statute makes it a felony to bribe a legislative officer.  If the defendant solicited that he be bribed, he solicited the commission of a felony, and he therefore committed a common-law misdemeanor.

The cases of State v. Priestley, 74 Mo. 24, and State v. Harney, 101 Mo. 470, are not authorities in favor of defendant, nor are they opposed to the conclusions we have stated.  Each of those cases was founded on indictments for an attempt to commit a rape.  The facts in each were that the accused merely solicited consent to the sexual act proposed.  Rape and attempt to rape, each mean an assault; and words of solicitation or persuasion do not constitute an assault. Indeed, the familiar statement in criminal law, that words do not justify an assault, shows that mere persuasion can not be construed to be an assault and without an assault there can be neither rape nor an attempt to rape.  It is true that in the Harney case the person solicited was a child under twelve years, and if the act had been consummated, or attempted, her consent (by force of the statute) would not have been a defense.  But yet, an act must be committed which, in the case of an older person, would constitute an *assault*.  In the case of an older person there must be no consent to the act, or the attempt.  In the child the law assumes there can be no consent, but, in order to constitute the offense the same acts committed against the older person without her consent

must be committed with the child, though with her consent.

It is thus readily seen that the solicition for bribery and for sexual intercourse are in no way alike in the essentials which constitute a crime. Another distinction illustrates the lack of analogy. To solicit a bribe is to solicit a crime to be committed by the party solicited; while to solicit sexual intercourse is not to solicit the perpetration of a crime (except in States where the intercourse is made a crime). And even where the solicitation is made of the child it is not a solicitation for her to commit a crime.

It is finally argued that the evidence does not show defendant to be guilty. Under our system, the issue whether he was guilty is not triable in an appellate court. Facts are to be determined by a jury. We will pronounce upon a case in which there is no substantial evidence to sustain a verdict, but where there is evidence, its credibility and weight are exclusively for the jury under the supervision of the trial court. That court having the better opportunity for correct conclusions as to the weight of evidence, is entrusted with far larger discretion over verdicts than has an appellate court. [Reid v. Ins. Co., 58 Mo. 421; Bank v. Armstrong, 92 Mo. 265; State v. Young, 119 Mo. 525; Hunt v. Ancient Order, 105 Mo. App. 41.]

We pass then to the question whether there was any substantial evidence of defendant's guilt upon which the jury could base a verdict, and find it to be ample. The principal witness was Whitney Layton, who was interested in the manufacture of a baking powder in which alum was an ingredient. The Legislature of Missouri had enacted a law by passing a bill known as the "Pure Food Law" which prohibited the use of alum in food products. Manufacturers of baking powder who used alum in their product (Layton's company among others) were endeavoring to secure the repeal of that law at the session of the Legislature in

1903. A repeal bill had passed the House of Repre-
sentatives and was pending in the Senate, of which, as
before stated, defendant was a member. Layton testi-
fied that he had met defendant at different times and
had spoken to him in support of the repeal bill and
asked his aid in securing its passage, when finally they
met, by chance, one evening in a room back of the cloak
room on the Senate side of the Capitol building. They
sat down in conversation when the subject of the repeal
was brought up and defendant suggested that Layton's
interests needed three votes in the Senate to defeat the
label substitute (which had been introduced) and to
pass the repeal bill. That for the sum of $4,500 he
could control two votes in addition to his own and that
that would repeal the bill. That for $4,500 he could
deliver the three votes necessary to pass the bill—his
own and two others. Layton further testified that he
did not accept the proposition; that defendant said that
they would see Smith (another Senator) and go into
the matter further. As they were about to leave the
Capitol building Senator Smith came in and the three
walked over to the hotel (the Madison House). There
was a large crowd at the hotel and a ball was going on
upstairs, attended by some of the members of the Gen-
eral Assembly with their wives, and these parties be-
came separated without conferring together, though
Layton stated that during the course of the evening
he talked with Smith when the latter stated that he
preferred to do whatever he did in the matter without
the defendant's presence. This statement was stricken
out by the court on defendant's motion.

The defendant testified in his own behalf and called
in his chief support two witnesses, one of them being
Senator Smith. Defendant denied meeting Layton at
the Capitol building on the evening stated. He denied
being acquainted with him until at the Madison House,
Smith introduced them. He denied that he solicited a
bribe, but said that Layton, on the evening in question,

immediately after being introduced took him to one side and offered to bribe him for his vote with "a good round sum." That Layton said to him: "That was the way things are running in the Missouri Legislature and we have to fight the Devil with fire. I have with me sixteen votes who will stay with me until hell freezes over. I have got to have two more men and I am willing to pay fifteen hundred dollars a piece for them, and I will pay you three thousand dollars if you will get me those two votes. I have twenty-five hundred of it in my pocket now, and I can get the other five hundred by the last of the week." To this proposition he says, he replied: "Well, Mr. Layton, it seems to me that if you have a meritorious bill pending before the Legislature it would not be necessary for you to buy support for it." He said that then Senator Smith came up, when Layton asked them up to his room, "to discuss the matter." He then stated that: "I started up stairs, not knowing whether Senator Smith was coming or not, but I went up to the ball room, or parlor, where my wife was and took her and came up to the Monroe House; and that was the extent of the conversation I had with Mr. Layton; it is all I had with him except to pass the time of day." That he never had a conversation with him afterwards further than to exchange greetings when they met.

Smith was under indictment for a like offense. He denied that he met defendant and Layton at the Capitol building and accompanied them to the hotel. He said that he met them at the hotel and, they not being acquainted, he introduced them. That he then stepped away and defendant and Layton entered into a conversation. That afterwards, on the same evening, at the hotel, he met Layton, who knew that he (Smith) was not friendly to the repeal of the alum law Layton wanted repealed, that they entered into conversation in which Layton told him flatly that he had tried to bribe defendant; that he had offered him fifteen hundred dol-

lars a piece for his vote and one or two more which he needed for a majority, and that he had nearly enough money with him and could get the balance. That he asked him (Smith) to see defendant for him and see how he took the proposition; that he (Layton) was a little alarmed about it; and that he (Smith) declined to do so.

The other witness was then introduced. He stated that he first met Layton on the train between Jefferson City and St. Louis and was introduced to him. That Layton then proposed to engage him to bribe defendant. He said that Layton seemed much pleased to hear him say that he thought it unjust to discriminate against anything manufactured in this State. The witness continued in these words: "He says, 'I would like for you to help me out in this.' He says, 'I have got no big money, but I am willing to spend two or three thousand dollars for enough votes—at this time it takes about three votes.' I listened to him. He says, 'Now, you have a Senator from your county that I have never been able to have any satisfactory conversation with,' and, he says, 'he has always,' that is, Senator Sullivan, 'he has always stood—' "

Mr. Crow: "Did he say, 'from your county?' "

Witness: "No, sir; he said, 'from your country,' and he said that Senator Sullivan said he was always going to do what his people said—stand by his people, but he thought he could be purchased; and he said, 'you see what you can do with him.' After he got through with all this conversation I told him, I says, 'Mr. Layton, I have never handled any boodle or anything in my life, and I can't do it now. If I could do anything for you or your bill legitimately, I would be glad to.' So I see him several times up here and talked to him casually about it; but after I seen that they was putting up money in it I never paid any more attention; but I talked to him several times up at Jeff. City, and he said he was having a hard fight."

It is thus apparent from the evidence of each side that the subject of bribing defendant was discussed between him and Layton. The only dispute is as to which party made the advance. The issue was a single and simple question of fact for the jury to determine. We can not say that reason and the probabilities were so overwhelmingly in favor of the testimony given by defendant and his witnesses as to destroy the testimony of the prosecuting witness. No just and fair mind could come to such conclusion. No motive was shown why Layton would make a false accusation or that he had ill will against defendant. The jury may very well have refused to credit the extraordinary story of the defense. It is certainly remarkable that a person, immediately upon his first introduction to one holding an important office, should take him to one side and without a word of encouragement, boldly offer him a large sum of money as a bribe for himself and two others holding a like office. It is strange, too, that Layton shortly afterwards, on the same evening, should voluntarily tell Smith of his effort to bribe defendant and ask him to see defendant and find out what he thought of it, and that neither defendant nor Smith should become offended. It is equally strange that Layton at his first meeting with the other witness, a stranger, should offer to engage him to bribe defendant. There are many matters of detail appearing in the testimony of these three, not necessary to comment upon, which do not add to its plausibility; suffice it to say, the jury may well have looked upon the stories as clumsy efforts to aid defendant in escaping punishment for an offense so harmful to the State and disgusting in its nature and its perpetration and so refused to credit them.

We have not discovered any legal reason for disturbing the judgment of conviction and hence order its affirmance. The other judges concur.