**STATE of Missouri, Respondent,**

v.

**Donald STEFFEN, Appellant.**

**No. WD 33518.**

Missouri Court of Appeals,
Western District.

Dec. 21, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Feb. 8, 1983.

Murry A. Marks, Clayton, for appellant.

John Ashcroft, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from a conviction for two counts of receiving stolen property in violation of § 570.080, RSMo 1978. The judgment is affirmed.

Before setting forth the pertinent facts, the charged errors and disposition of this appeal, it is necessary to outline the pretrial activities which occurred to clarify how this cause reached final disposition by the trial court.

On February 21, 1979, the office of the Attorney General was appointed special prosecuting attorney. (This becomes important as it is a charged error by appellant observed infra). On October 2, 1979, the Grand Jury, impaneled in Shelby County, returned its indictment. Various pretrial motions were filed, including withdrawal of defense counsel and the entry of successor counsel, and defendant's motion for change of venue. Concerning the latter motion, the cause was ordered transferred to Boone County for trial. Following various continuances, the cause was called for trial on July 30, 1981. On the morning of the trial, respondent sought and was granted leave to file an information in lieu of the indictment. Appellant made an oral request for continuance, which was denied. Appellant requested that he be sentenced in regard to another charge and this was completed.

The court then suggested bringing in the jury panel. Appellant was granted a brief recess, at the end of which he announced, through counsel, his desire to change his plea to guilty. The trial court then undertook an examination of appellant for purposes of the guilty plea. After a rather lengthy inquiry, the trial court concluded, "Upon inquiry, Court finds plea of guilty is equivocal and declines to accept same." The trial court then directed the guilty plea be set aside and a plea of not guilty reinstated. At this point, appellant, through his counsel, advised the court he wished to waive trial by jury and desired the case be tried to the court. The court asked, "Is there a factual question that would have to be decided by a jury?" Appellant requested a brief recess to confer with counsel and then through counsel, announced to the court:

"MR. MARKS: Your Honor, at this time, it's the position of the defendant that with regard to whatever evidence the State presents, either by way of witnesses or even by way of summation, *that he does not intend to contest the State's evidence, that he is of the opinion that the State's evidence would be sufficient and overwhelming regardless of his belief that he bought the tractors, as he indicated to you, bought these as he stated, so we are willing to submit this matter to you on the basis of . . . the state's attorney's presentation or recitation of what he believes his evidence will show.* He may present one of the officers of the Federal Bureau of Investigation to give evidence, and then the defendant is going to rest, Your Honor. He has already given you his version of what occurred. He has no other evidence other than that that has any probative value. I think we can make a rather short case out of this." (emphasis added).

After confirmation by appellant upon the record that he wanted to waive trial by jury, the court ordered the case consented to waiver of the jury pursuant to Rule 27.01.

Appellant challenges the sufficiency of the evidence, necessitating a recital of pertinent facts. The record reveals that two John Deere tractors were stolen. The first was a Model 4240, stolen from the University of Illinois Orr Agricultural Research

Center at Perry, Illinois, the night of July 15/16, 1979. This tractor also contained a tool box with tools engraved with UIORC and a five-digit number. The serial number of this tractor was 011345. The value of this tractor was fixed at approximately $30,000.

A second John Deere tractor was stolen during the month of July, 1979, from the premises of an implement dealer in Mt. Pleasant, Iowa. This was a John Deere, Model 4440, and bore a serial number of 27054. The value of the second tractor was fixed at approximately $33,729.00.

Under a search warrant, both tractors were recovered from appellant's farm by federal, state, and local law enforcement officers on August 4, 1979. The plates for the serial numbers were missing, but those numbers were stamped into parts of the tractors and identification was completed. The tools and certain parts (i.e., weights) of the tractors were never recovered.

The evidence also included testimony by an employee of a subsequent owner of appellant's farm.[1] This employee testified that on May 19, 1981, while cleaning one of the farm buildings, he discovered a serial plate bearing the number 27054.

In addition to the foregoing, respondent called one Jerry Newton as a witness. Newton testified that he was a truck driver, and that he, along with one Joe Phipps and Sam Harper, stole some tractors. Newton testified that the stolen tractors were delivered to two people, one of whom he recognized and named as appellant. Newton testified that he and Phipps went to appellant's farm on two or three occasions before the delivery of the tractors. Newton stated that he and Phipps stole the first tractor near Perry, Illinois and that he delivered the tractor late one night or early morning to appellant's farm. Newton then testified that the next morning, he and Phipps took appellant to one of the latter's farm buildings and showed appellant the tractor. A discussion was held between the three of them and according to Newton, appellant said he needed to dispose of the tools and

the serial plates. Newton testified that appellant wanted only John Deere tractors and no other brand. Newton stated that the cash price was $10,000. Newton testified that that he saw appellant give money to Phipps. Newton testified that $10,000 was split evenly three ways between him, Phipps and Harper. Newton stated that some three to four weeks later he, Phipps and Harper traveled to Mt. Pleasant, Iowa and stole a second John Deere tractor from the premises of an implement dealer and delivered it to appellant. The price for the second tractor was also $10,000 cash, but Newton disclaimed that full payment was ever made.

On cross-examination, one F.B.I. agent stated that appellant told him that he (appellant) had purchased the two tractors from a Larry Johnson from Sikeston, Missouri for $48,000 cash, most of which was furnished by appellant's son-in-law.

Evidence for the defense consisted of the testimony of appellant's wife, who disclaimed ever seeing or meeting Newton. Newton had testified earlier that on one trip to appellant's farm, he had met appellant's wife. There was offered, by stipulation, the grand jury testimony of one Ron Buswell. That testimony was as follows:

"Q. Do you know if the tractors you saw at Donald Steffen's in early June were the same ones that were there when the FBI seized them?

A. Do I know for a fact?

Q. By Mr. MacFarlane: Yes.

A. It appeared to be the same tractor, and it looked the same. I have never been in a tractor, and I couldn't tell you.

MR. MARKS: This is from page 151:

Q. What type of tractor was it?

A. Well, along about the first part of June, there was a 42–40 they were cultivating with.

Q. What make was it?

A. John Deere.

Q. This tractor wasn't on the farm prior to the . . . to the bean planting?

1. Appellant filed bankruptcy and no longer owned the farm on May 19, 1981.

A. You mean the 42–40?

Q. Yes.

A. I ... I didn't see it. It could have been there. The first time I saw it was when they were cultivating with it.

Q. That was in June, late June?

A. No, the first part of June."

Defense evidence concluded with the testimony of appellant, who claimed purchase of the tractors from one Larry Johnson for a cash payment of $48,000. Appellant admitted that he did not receive any receipt or bill of sale for his purchase. He stated he had ordered the tractors in April, 1979. He further stated that he had no knowledge that the tractors were stolen when he made arrangements for their purchase.

The evidence closed. The trial court found appellant guilty on both counts and fixed punishment at five years on each count, to be served concurrently. This appeal followed.

Appellant presents three points, which in summary charged the trial court with error in (1) failing to sustain appellant's motion for judgment of acquittal in that the evidence was insufficient to sustain a finding of guilt beyond reasonable doubt; (2) failing to sustain appellant's pretrial motion and motion for new trial alleging dismissal of the indictment because of the unauthorized and illegal appointment of the Attorney General as special prosecutor; and (3) failing to grant appellant's motion for continuance, thus violating his constitutional rights in that he was not accorded the right to have investigative and depositional services or the services of experts as provided in § 600.150, RSMo 1978.

Under his first point, appellant contends that the evidence was insufficient to sustain a finding of guilty and puts forth six specific arguments. Each is taken up and disposed of individually.

Sub (a): "The state failed to prove that defendant had actual knowledge that the tractors were stolen and no evidence was adduced proving that defendant had been informed that the tractors were stolen."

Before discussing this contention, in light of the evidence relative thereto, it is necessary to clarify a misconception evident in appellant's argument with regard to the elements of § 570.080, RSMo 1978. Appellant cites to this court *State v. Reo*, 510 S.W.2d 211 (Mo.App.1974); *State v. Taylor*, 422 S.W.2d 633 (Mo.1968); *State v. Woods*, 434 S.W.2d 465 (Mo.1968); *State v. Miller*, 433 S.W.2d 281 (Mo.1968) and *State v. Davis*, 607 S.W.2d 149 (Mo. banc 1980). From this battery of caselaw, appellant argues that respondent must have proven beyond a reasonable doubt that he (appellant) had *actual knowledge* of the character of the goods as stolen *at the time* he received them. The defect in appellant's reliance upon that authority, and hence his argument, is that those decisions turned upon interpretation and application of § 560.270, RSMo 1959, which was repealed and superceded by § 570.080, RSMo 1978, under which he was charged and convicted. To permit comparison, both statutes are set forth below:

"560.270. Receiving stolen property.— Every person who shall buy, or in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall, upon conviction, be punished in the same manner and to the same extent as for the stealing of the property so bought or received."

"570.080. Receiving stolen property

1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen.

2. Evidence of the following is admissible in any criminal prosecution under this section to prove the requisite knowledge or belief of the alleged receiver:

(1) That he was found in possession or control of other property stolen on separate occasions from two or more persons;

(2) That he received other stolen property in another transaction within the year preceding the transaction charged;

(3) That he acquired the stolen property for a consideration which he knew was far below its reasonable value.

3. Receiving stolen property is a class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more, or the person receiving the property is a dealer in goods of the type in question, in which cases receiving stolen property is a class C felony."

Case interpretation and application of the predecessor statute required the state to prove *actual knowledge*. This is no longer required, but a conviction will be sustained if the accused "knew or believed the property being received was stolen." *The New Missouri Criminal Code*, A Manual for Court Related Personnel, § 15.6, Stealing and Related Offenses, pp. 15–9, 15–10. The authority cited by appellant finds no application to the instant case. It is to be noted, however, that the above cited authority recognized that proof could be upon circumstantial evidence as well as direct evidence.

With the foregoing in mind, this court is required to determine whether the evidence supports a finding that appellant knew or believed the tractors to be stolen at the time he received them.

Possession of the tractors is not in dispute. A review of respondent's evidence reveals through Newton that on two or three occasions, Newton and his accomplices met with appellant. Newton testified that appellant was asked if he would take any other brand of tractor and appellant responded in the negative. Newton testified that appellant agreed to payment of $10,000 cash for each tractor and was observed making payment (on one occasion) to Phipps. The value of the tractors was placed at $30,000 and $33,729 (approximate figures). Delivery was made to appellant's farm late at night with the tractors being placed in one of appellant's farm buildings.

Newton also testified that when the first tractor was delivered, appellant noticed there were marked tools in a tool box affixed to the tractor, along with serial plates on the tractor, and Newton testified that appellant stated to him (Newton), "that those could be disposed of . . ." Other evidence included later discovery of one of the serial plates in a farm building upon the farm previously owned by appellant. The evidence further revealed that the two tractors were recovered from appellant's possession by law enforcement officers. Accordingly, from the evidence offered by respondent, appellant paid approximately ⅓ the retail value of the tractors.

As to the credibility of the witnesses, this was a matter for the trial court sitting as the trier of fact. *State v. Styles*, 476 S.W.2d 591 (Mo.1972); *State v. Weeks*, 603 S.W.2d 657, 664 (Mo.App.1980); and *State v. Fingers*, 564 S.W.2d 579 (Mo.App. 1978). In reviewing and determining the sufficiency of the evidence to support a judgment in a jury waived case, the evidence and all reasonable inferences therefrom are considered in the light most favorable to the state. *State v. Gardner*, 518 S.W.2d 670 (Mo.App.1975). The appellate court reviews the evidence as though a verdict were rendered by a jury and will proceed to determine whether substantial evidence was adduced to support the judgment of the trial court considering as true that evidence most favorable to the state, including all reasonable inferences therefrom, and will disregard all contrary evidence and inferences. *State v. Seaman*, 625 S.W.2d 950 (Mo.App.1981) and *State v. Runyon*, 619 S.W.2d 955 (Mo.App.1981). See also Rule 27.01.

Under the foregoing, it cannot be concluded that there was a lack of substantial evidence that appellant knew or believed the tractors were stolen at the time he received them as prescribed by our statute. Sub-point (a) to point (1) is found to be without merit and is ruled against appellant.

Sub (b): "There was insufficient circumstantial evidence from which it could be inferred beyond a reasonable doubt the defendant knew the tractors were stolen."

This sub-point has been determined by our disposition of sub-point (a), and this sub-point is found to be without merit and is ruled against appellant for the same reasons.

Sub (c): "When Newton and Phipps allegedly delivered the tractors to defendant's farm, there was no discussion concerning where the tractors had been obtained."

It is the conclusion of this court that "where" the tractors were obtained is not the decisive element. Rather, the question turns upon whether the whole of the evidence is substantial as to whether appellant knew or believed that the tractors had been stolen at the time he received them. As under sub-point (a) above, this issue has been determined. Sub-point (c) is without merit and is ruled against appellant.

Sub (d): "Defendant made no attempt to conceal that he had the tractors in his possession."

■ This is not a required element of proof necessary to sustain a conviction under the statute. Sub-point (d) is without merit and is ruled against appellant.

Sub (e): "Defendant's explanation that he purchased the tractors from one Larry Johnson in Sikeston, Missouri was not refuted by the state by any credible evidence."

■ Respondent was not required to refute appellant's evidence on this issue. The trial court was at liberty to believe or disbelieve this testimony, and it obviously elected not to believe it. It is noted that appellant testified to a cash purchase for $48,000 of the tractors from Johnson without receipt or bill of sale. This court defers to the trial court upon the issue of credibility. *Styles, Fingers,* and *Weeks, supra.* Our review demands consideration of that evidence most favorable to the state and all inferences therefrom, and the disregard of all contrary evidence and inferences therefrom. *Gardner, Seaman,* and *Runyon, supra.* Sub-point (e) is without merit and is ruled against appellant.

Sub (f): "The state failed to rebut defendant's testimony as to exclude any reasonable hypotheses of defendant's innocence."

The evidence, taken as a whole, is found to be consistent with a hypotheses of appellant's guilt and inconsistent with any reasonable hypotheses of his innocence, thus conforming to the rule prescribed by *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1976). Sub-point (f) is without merit and is ruled against appellant.

Point (1), including sub-points (a), (b), (c), (d), (e), and (f) is found to be without merit and is ruled against appellant in its entirety.

Under point (2), appellant charges that the trial court erred in its failure to sustain his pretrial motion, and the same contention within his motion for new trial that the indictment should have been dismissed because it was secured by an assistant Attorney General appointed as a special prosecutor, and said appointment was unauthorized and illegal.

Appellant offers three separate contentions under this point. He asserts (a) that the Attorney General's office appeared as special prosecutor upon the order *only* of the circuit judge; (b) there was no order obtained from the Governor directing the Attorney General to aid the prosecutor in the case pursuant to § 27.030, RSMo 1978; and (c) the Attorney General may assume all prosecutorial duties only after an order from the Governor to that effect has been obtained.

The record reveals that the circuit judge appointed the Attorney General's office as special prosecutor before the Shelby Grand Jury after it was learned that the county prosecutor was involved in civil litigation against appellant. The circuit judge proceeded to appoint the Attorney General pursuant to § 56.110, RSMo 1978. In order that it be better understood what these two statutory sections provide, they are set out below:

"27.030. To aid prosecuting and circuit attorneys, when.—When directed by the governor, the attorney general, or one of his assistants, shall aid any prosecuting or

circuit attorney in the discharge of their respective duties in the trial courts and in examinations before grand juries, and when so directed by the trial court, he may sign indictments in lieu of the prosecuting attorney."

"56.110. If interested in case, court to appoint substitute.—If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in any criminal prosecution, either by blood or by marriage, the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause."

In his argument under this charged error, appellant stands on the wording of § 27.030 and refers this court to *State v. Hays,* 23 Mo. 287 (1856); *State v. Huett,* 340 Mo. 934, 104 S.W.2d 252 (1937); *State v. Cummins,* 288 S.W. 792 (Mo.App.1926) and *State v. Sullivan,* 110 Mo.App. 75, 84 S.W. 105 (1904), contending that the circuit court was without authority to appoint the Attorney General as special prosecutor.

Review of the above cited authority reveals that they neither control nor persuade. *Hays* is an 1856 decision wherein our state Supreme Court ruled that a conviction for murder would not be reversed on the premise that the Attorney General, without the direction of the Governor, assisted in the prosecution at the request of the local circuit attorney with leave of court.

In *Huett,* our state Supreme Court ruled that in cases where the Governor had made, by his order, appointment of his assistants as special prosecutors, they in turn need not be formally appointed by the court. As in the instant case, the accused in *Huett* made a direct attack upon the appointment of an assistant Attorney General as special prosecutor by the court. The court overruled the accused's motion to quash the appointment order. The distinguishing factor in *Huett* is that the Governor had, in fact and by letter, ordered the assistant Attorney General to act as special prosecutor. *Huett,* 104 S.W.2d at 260 also recognizes the authority of circuit courts to direct assistant Attorneys General (appointed as special prosecutors) to sign indictments in lieu of the prosecutor. The court went on to declare,

"The statute, said section 11273, says that when so directed by the trial court the Attorney General may sign indictments in lieu of the prosecuting attorney, *but it does not say that, as a prerequisite to his right to sign he must have been formally appointed by the court as special prosecutor in the case."* (emphasis added).

It must be further noted that the court in *Huett* did not reach the precise question presented in the instant case. At 104 S.W.2d 260, the *Huett* court further pointed out, "We, therefore, think it unnecessary to determine whether or not Judge Dearing's order, standing alone, made as it was by the *judge* in vacation as distinguished from the *court,* would have been sufficient to vest Mr. Taylor with authority to file the information."

In *Sullivan,* there was no question of the authority of the Attorney General because the Governor had directed that he aid the local prosecutor. In *Cummins,* the defendant was the local prosecutor. The circuit court requested the Governor to direct the Attorney General to "appear and assist the grand jury."

None of these authorities speaks directly to the issue presented in the instant case, and therefore, none of these authorities either controls or disposes of the issue. Respondent directs our attention to *State v. Todd,* 433 S.W.2d 550 (Mo.1968), a case in which the right or authority of the Attorney General to file and proceed with an appeal was challenged. That contention was struck down by the court. *Todd* is significant, for it directs attention to the case of *State v. Naylor,* 328 Mo. 335, 40 S.W.2d 1079 (1931). In addition, in *Todd* at 553–54, our state Supreme Court declared:

"That statute [§ 27.030] was obviously intended primarily, if not exclusively, to cover the institution and trial of criminal cases, and proceedings before grand ju-

ries. The Attorney General is expressly given the management of all appeals and writs of error to which the State is a party ... The Attorney General is the chief legal officer of the State; actually, the various offices of the prosecuting attorneys are 'carved out of' this overriding authority, with local implications."

In *Naylor,* there was an order from the Governor (although the order incorrectly named the local county), but the case is significant in that our state Supreme Court held at 1085, citing *Hays,* that "*the Attorney General had a right to assist the circuit attorney, when so requested by the latter, without an order from the Governor. We see no reason why he might not do so, as employed counsel might.*" (emphasis added)

We thus resolve this issue in the following manner. It is clear from *Naylor* that a mere request for assistance from a local prosecutor *without any supporting order from the Governor is permissible.*

It cannot follow that either a *request* or an *order* from a circuit judge carries any less weight or authority than the mere request of a local prosecutor. Quite the contrary, the rationale expressed in *Naylor* is applicable to an order of appointment of the Attorney General as a special prosecutor. That an assistant Attorney General may be sent to handle the matter has already been answered in *Naylor* as well.

In addition, after reviewing § 27.030 and § 56.110, we conclude the following. Section 27.030 provides a statutory vehicle whereby either at his own option or upon the request of the local prosecutor and/or circuit judge, the Governor can direct aid to local prosecutors. Upon such direction the court in turn may direct the Attorney General to sign indictments in lieu of the local prosecuting attorney.

■ After reviewing § 56.110, we conclude that the circuit court has the authority to legally appoint the Attorney General to prosecute or defend in any criminal prosecution once determination is made that the prosecuting attorney or assistant prosecut-

ing attorneys are disqualified within the language and intent of § 56.110. We further hold that the Attorney General is an *attorney* within the language and intent within § 56.110 which declares, "*may appoint some other attorney*" when and upon a showing that the appointment is so required within the purposes of the statute.

In scrutinizing both § 27.030 and § 56.-110, there is nothing which forces the conclusion that one statute is interdependent upon the other. Nor can it be concluded that they conflict with each other. The conclusion which is reached herein is that the circuit court, when warranted by the facts and circumstances within the conditions prescribed or referenced in § 56.110, is authorized to "appoint some other attorney". We further conclude that for purposes of the statute, "some other attorney" includes the Attorney General of this state. To conclude otherwise, as suggested by appellant, would be to condition or subject the authority of our circuit courts to the authority of the Governor. Section 56.110 contains no such limitation either expressly or by intent within its terms. Had the legislature chosen to have so limited the courts, we believe such limitation would have been expressly included within the wording of § 56.110. The practical result of a contrary conclusion is to eliminate a ready, available source of counsel to represent the public interest. The result in narrowing this source of counsel casts upon other members of the Bar that responsibility and includes all of the practical ramifications attending such responsibility.

It is found herein that the circuit court was authorized and did legally appoint the office of the Attorney General as special prosecutor within the terms and intent of § 56.110. It is further found that § 27.030, by its terms, places no limitation upon § 56.110. Nor is it required that the provisions of § 27.030 be invoked or complied with before any circuit court may exercise its prerogative under § 56.110.

Point (2) presented by appellant is without merit and is ruled against him.

Under his final point (3), appellant contends that the trial court erred in failing to grant him a continuance, and this violated his constitutional rights in that he was not accorded the right to have investigative and depositional services or the service of experts as provided in § 600.150, RSMo 1978.

Appellant's argument really breaks down into four areas, which in summary charge that (a) he "could not adequately prepare his defense without taking depositions of witnesses and scientifically examining items in evidence;" (b) "defendant was initially informed that no funds were available for such services under V.A. M.S. 600.150;" (c) "when funds became available, defendant was denied access thereto by the court's denial of his motion for a continuance;" and (d) "pursuant to the guidelines in *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64, 65 (Mo. banc 1981), defendant was denied a proper evidentiary hearing in order to determine his eligibility for the finding pursuant to V.A.M.S. 600.-150."

In addition to his claim that *Wolff* controls, appellant relies upon *Williamson v. Vardeman*, 674 F.2d 1211 (8th Cir.1982).

It is concluded herein that neither *Wolff* nor *Williamson* apply (and hence do not control) in the instant case. *Williamson* was a case which came before the federal courts on a federal writ of habeas corpus because of counsel's refusal to defend an accused and the finding of counsel in contempt for that refusal. In addition, there was a request, a hearing, and a finding in *Williamson* that a sum of $500 would be necessary for defense preparation. Even upon this finding, the trial court declared that an order directing said funds would be futile since monies allocated for such purpose by the Missouri General Assembly had already been expended. The ruling in *Williamson* was expressly limited to the issue of whether Missouri courts would compel private attorneys to represent indigent defendants when there are no public funds to pay expenses and fees in such cases. *Williamson* does not apply to the instant case.

*Wolff* equally is not controlling. *Wolff* addresses the problem of appointed counsel not being compensated and the problem attending out-of-pocket expenditures by counsel in representing indigents. In *Wolff*, the court speaks to the conduct of a hearing upon this issue. In this regard, the court also speaks to the conduct of a hearing *upon request* concerning the propriety of the appointment of counsel. The point drawn is that a hearing upon these issues must be preceded by a request for a hearing on these questions. The record in the instant case reveals no such request. In contrast, the record reveals that appellant requested a continuance for the purpose of interviewing a state's witness. This was the fourth such request. Appellant then advised the court that he understood monies were available for investigative purposes. There was never any request for such funds from the court. *Ruddy, supra*. For discussion as to proof of need and review of same, see *State v. Carroll*, 629 S.W.2d 483, 484 (Mo.App.1982).

In addition to the inapplicability of *Ruddy* and because of the failure to request funds and to provoke a hearing on that issue, appellant herein has neither alleged nor set forth facts revealing how he was prejudiced by the trial court's refusal to grant the continuance. Such a showing is required. *State v. Pride*, 567 S.W.2d 426, 429 (Mo.App.1978). The evidence upon this question must be "clear and convincing" that the denial or restriction of investigative funds has substantially prejudiced the defendant. *State v. Brown*, 599 S.W.2d 498, 505 (Mo. banc 1980). There is nothing upon this record which reveals any substantial prejudice to appellant related to the trial court's denial of his request for a continuance. In the absence of this crucial element, the matter turns upon whether the trial court abused its discretion in denial of the continuance. *State v. Dominique*, 619 S.W.2d 782 (Mo.App.1981). We find no abuse of discretion.

There is no merit to appellant's point (3) and it is ruled against him.

Judgment affirmed.

All concur.