THE STATE v. JOSEPH L. HUETT, Appellant.—104 S. W. (2d) 252.

Division Two, April 21, 1937.

*Wm. P. Elmer, John R. Johnson, Verne Lacy, W. Jack Moore* and *Lee Kinder* for appellant.

*Roy McKittrick,* Attorney General, *J. E. Taylor* and *Olliver W. Nolen,* Assistant Attorneys General, for respondent.

COOLEY, C.,—Under an information, charging murder, filed in the Circuit Court of Reynolds County, the appellant was convicted of manslaughter, sentenced to five years' imprisonment in the penitentiary in accordance with the verdict of the jury, and has appealed. He was represented below and is here by able counsel who have filed here an exhaustive brief in which the verdict and judgment are challenged on certain grounds therein set out and briefed. We shall notice the grounds and contentions briefed and state the facts sufficiently for determination thereof, and, following our recent decision in State v. Mason, 98 S. W. (2d) 574, shall not discuss the other alleged errors complained of in the motion for new trial nor attempt to state in detail facts bearing only upon such abandoned contentions.

On the evening of August 10, 1935, appellant, with a pistol, shot and killed one Ruel Hunter. We may refer to appellant as the defendant and to Hunter as the deceased. The killing is admitted, defendant's defense being self-defense. The fatal encounter occurred in the street near, or possibly upon, the sidewalk, (it is here immaterial which) at or near the intersection of two streets near a beer tavern in Centerville, Reynolds County, and near the courthouse. The State's evidence tended to show the following:

Defendant had been in and out of the tavern several times that day. Towards evening he went with one Pulley to a toilet back of the courthouse and while so doing exhibited a pistol and said he was going to kill some son-of-a-bitch before night. There is evidence in the record from which it could be found that this threat referred to Hunter and that defendant and Hunter had previously had some difficulty or misunderstanding and defendant had said, referring thereto, that Hunter had jumped onto him once and that if he did it again he, defendant, would kill him. There was some evidence, not clear, from which it might be inferred that defendant had an altercation with one Fox (not a witness) in the beer tavern in the afternoon of August 10th, following which Fox had communi-

cated with Hunter; also that defendant and Hunter had meet in the tavern that afternoon, though it does not appear that there was a quarrel between them or threats made by either at that time, except some evidence tending to show that when Hunter left the tavern he called back to defendant or generally to those inside, including defendant, to wait ten minutes, he would be back. He was then unarmed. The evidence indicates that soon thereafter defendant left the tavern, going to the office of one Dr. Pyrtle. Soon after that defendant and deceased met at the place where the homicide occurred. Defendant, with Dr. Pyrtle, was coming from Dr. Pyrtle's office going toward the tavern. He had, concealed upon his person, a pistol, fully loaded. Hunter was armed with a single barreled shotgun, which he was carrying under his right arm with the muzzle pointed downward. The evidence is conflicting as to details of what occurred when defendant and deceased thus met. There is evidence that deceased asked defendant, "Where is your gun?" to which defendant replied that he had no gun, and further stated to deceased in the course of the (admittedly short) conversation that he wanted no trouble with deceased, to which latter statement deceased replied, "All right, if you don't want any trouble I don't want any either;" that thereupon defendant walked past deceased, who was making no threatening demonstration with his shotgun, and that after having passed deceased two or three steps he turned, drew his pistol and shot deceased. The evidence discloses that the epithet "liar" or "God damn liar" was used by one or the other of the two men during the short altercation above referred to. By some witnesses the use of that epithet was attributed to defendant, by others to deceased.

It appears from the State's evidence that defendant fired two shots in quick succession, after which, almost instantly, deceased's shotgun was discharged, the charge striking the ground to the side of and rather close to defendant's feet, but not hitting him. It does not appear whether the shotgun was discharged purposely or unintentionally, though it would seem that deceased must have had his hand about the lock and probably his finger on the trigger when the shooting began. From defendant's testimony it could be inferred that the shotgun was discharged intentionally. Following that shot there were two or three more shots from defendant's pistol, but it is difficult to tell the precise time, with reference to other occurrences about to be related, at which they were fired.

Deceased received two wounds, from the effects of one or both of which he died the next morning. We gather from the evidence that either might have proved mortal. The State's theory is, and its evidence tends to show, that they were inflicted by the first two shots that, according to the State's evidence, were fired before the shotgun was discharged. While the wounds proved to be mortal they

did not immediately incapacitate deceased. Immediately after the discharge of the shotgun he struck defendant over the head with it, knocking him down, sprang upon him and was beating him with his fists until pulled off by bystanders. There were more than two shots fired from defendant's pistol. Whether *all* of them, or only two, were fired before defendant was struck and knocked down as above stated, is difficult to tell from the evidence, nor do we think it material to the issues presented on this appeal. There was much confusion and, as might be expected, the testimony is conflicting and is not clear on this point. The shots were all in quick succession and the encounter occupied but a short space of time.

Defendant's testimony was to the effect that when he met deceased he did not actually stop, unless momentarily, but attempted to pass deceased; that as he did so deceased turned, keeping his face toward defendant and that just before the shotgun was discharged deceased raised the muzzle of said gun, as though to fire, so that it pointed about toward defendant's stomach, whereupon he, defendant, grabbed the gun barrel, pushing it aside, so that the shot, which followed instantly, missed him; and that he then drew his pistol and fired several times in quick succession. Without further detailing the evidence on this point, which is voluminous, and which we have outlined only in a general way, it will do to say, since defendant does not in his brief here question the sufficiency of the evidence to make a case for the jury, that the State's evidence tended to show a felonious homicide and that of defendant tended to show self-defense.

At the time of the homicide, August 10, 1935, defendant was prosecuting attorney of Reynolds County. On August 13th, Honorable E. M. Dearing, judge of the circuit court of said county, made, filed and caused to be entered of record in the office of the circuit clerk of said county, the following order:

"It appearing to the undersigned Judge of the Circuit Court of Reynolds County, Missouri, from information had and obtained from the Sheriff of said Reynolds County that the Prosecuting Attorney of said County, Joseph L. Huett, is now charged by an affidavit filed against him before a Justice of the Peace of Reynolds County, Missouri, with the crime of murder in the second degree; and it further appearing to the said Court that the public interests require that said charge be investigated and that there is no Prosecuting Attorney in said County, not interested in the inquiry, it is ordered and requested that Honorable Roy McKittrick, Attorney General of the State of Missouri, or some one of his assistants take charge of said investigation and have full charge to investigate and file any information, or charge warranted and necessary under the facts in the case, that he may conclude to be proper to the end that full and complete justice may be done in the premises.

"Done at chambers in the City of Potosi, Washington County, Missouri, as Judge of the 21st Judicial Circuit of Missouri and Ex-Officio Judge of the Circuit Court of Reynolds County, Missouri, this the 13th day of August, 1935.

"E. M. DEARING,

"Judge of the 21st Judicial Circuit of Missouri and *ex-officio* Judge of the Circuit Court of Reynolds County, Missouri."

On October 9, 1935, Judge Dearing, in vacation of said Reynolds County Circuit Court, made, filed and caused to be entered of record in the office of the circuit clerk, the following order (italics ours):

"It appearing to the undersigned Judge of the Circuit Court of the County of Reynolds, State of Missouri, from information had and obtained from the Sheriff of Reynolds County, Missouri, and from the Attorney General of the State of Missouri, that the duly qualified and acting Prosecuting Attorney of Reynolds County, Missouri, Joseph L. Huett, was prior to the 13th day of August, 1935, charged before a Justice of the Peace in and for said Reynolds County, Missouri, with the crime of second degree murder; and it further appearing that on August 13th, 1935, this court, in vacation, made and entered an order directing and requesting the Attorney General of the State of Missouri, or some one of his assistants to take charge of the investigation and have full charge 'to investigate and file any information or charge warranted and necessary under the facts in said case; and it further appearing that *at the request of the Governor of the State of Missouri on August 12, 1935,* the Attorney General of Missouri, through his assistants made an investigation of said charge; and it further appearing that on August 16, 1935, the said charge of murder in the second degree pending as aforesaid before said Justice of the Peace, and against the said Joseph L. Huett, as aforesaid, was dismissed by the representatives of the state and complainant; and it further appearing that on the 16th day of August, 1935, a complaint was filed against said Joseph L. Huett, Prosecuting Attorney of Reynolds County, charging said Joseph L. Huett with the crime of murder in the first degree, said complaint being filed on the affidavit of one Walt Ruble before John W. Pogue, a Justice of the Peace within and for Reynolds County, Missouri; and it further appearing that preliminary hearing on said charge of first degree murder against said Joseph L. Huett was had and held before said John W. Pogue, Justice of the Peace of Reynolds County, Missouri, on the 30th day of August, 1935, and that at the conclusion of said hearing the Justice aforesaid bound the said Joseph L. Huett over to the Circuit Court of Reynolds County, Missouri, to the November Term, 1935, thereof, to answer to any information that might be filed against him in said Court on said charge; and it further appearing that said Joseph L. Huett, Prose-

cuting Attorney as aforesaid, and defendant on the charge aforesaid, is an interested party in said proceeding, and that there is no Prosecuting Attorney or Assistant Prosecuting Attorney in said Reynolds County not interested in the charge aforesaid against the said Joseph L. Huett, Prosecuting Attorney, aforesaid; and it further appearing to the Court that J. E. Taylor is one of the duly qualified Assistant Attorneys General of the State of Missouri, and that Honorable Roy McKittrick, Attorney General of Missouri, has appointed and designated said J. E. Taylor to investigate the charges now pending against said Joseph L. Huett, as aforesaid; and it further appearing that the Circuit Court of Reynolds County has jurisdiction to try the charge aforesaid;

"It is therefore ordered and adjudged by the Court that the said J. E. Taylor, Assistant Attorney General of Missouri, be, and he is hereby appointed to file information against said Joseph L. Huett, Prosecuting Attorney of Reynolds County, Missouri, charging said Joseph L. Huett with murder in the first degree, whereof he now stands charged by affidavit and complaint, and to prosecute for and on behalf of the State of Missouri said charge and information and to do all things in connection with the prosecution of said cause which would fall upon the Prosecuting Attorney of Reynolds County, Missouri, if he were not disqualified from acting therein as aforesaid.

"Done at chambers in the City of Potosi, in the County of Washington, State of Missouri, by the Judge of the 21st Judicial Circuit of Missouri, and *ex-officio* Judge of the Circuit Court of Reynolds County, Missouri, and in vacation of said said Reynolds County Circuit Court, on this the 4th day of October, A. D. 1935.

"E. M. DEARING,
"Judge of the 21st Judicial Circuit of Missouri, and *ex-officio* Judge of the Circuit Court of Reynolds County, Missouri."

The information upon which the case was tried was filed October 24, 1935, still in vacation of court. It was signed "J. E. Taylor, Assistant Attorney General within and for the State of Missouri."

On November 9, 1935, Judge Dearing, still in vacation of the court, made the following written order and request and caused same to be filed and recorded in the office of the circuit clerk, viz.:

"It being shown to the undersigned Judge of the Circuit Court of the Twenty-First Judicial Circuit of the State of Missouri, and *ex-officio* Judge of the Circuit Court of Reynolds County, Missouri, that J. L. HUETT, the Prosecuting Attorney of said Reynolds County, stands charged by an Information filed against him by Hon. J. E. Taylor, Assistant Attorney General, heretofore appointed by the undersigned Judge to prosecute said cause, on account of the Prosecuting Attorney being disqualified; and it further appearing that said case of the State of Missouri, Plaintiff vs. J. L. Huett,

Defendant, is docketed for trial on Monday, November 18th, 1935, it being the first day of the next regular November Term of the Circuit Court of said County, and on account of the Defendant being an officer of said Court over which the regular Judge presides, the said Judge now disqualifies from sitting in the trial of said case, and requests Hon. Taylor Smith, Judge of the Twenty-Seventh Judicial Circuit of the State of Missouri to preside in the trial of said case, and the Hon. Taylor Smith, Judge as aforesaid, is requested to be and appear in the Reynolds County Circuit Court at Centerville, and on the first day of said November Term, 1935, and open said term of Court, in the absence of the regular Judge, for the purpose of trying said case, and for the further purpose of trying any other matters and causes pending before said Court until such time as the regular Judge may appear and take up his regular duties.

"Done at chambers in the City of De Soto, this the 9th day of November, 1935.

"E. M. DEARING,

"Judge of the 21st Judicial Circuit, and *ex-officio* Judge of Reynolds County, Missouri."

Pursuant to the above-quoted request Judge Smith appeared on the opening day of the Reynolds County Circuit Court, opened the court and proceeded to assume jurisdiction in this cause. On that day defendant first filed a motion by which and also by oral motion and objection he challenged Judge Smith's right and authority to assume jurisdiction of the cause and to preside as judge therein on the ground that Judge Dearing, the regular judge, was not shown to be disqualified and in attempting to disqualify himself had stated no legal grounds recognized by law as sufficient to disqualify him; that Judge Dearing was physically and mentally able to hold the court and try the cause; that defendant had the right to have his case heard by the regularly elected and qualified judge and that said judge, unless and until disqualified as provided by law, had the sole power and authority to try the cause; that said order and request made by Judge Dearing was not in compliance with Section 29, Article VI, of the State Constitution, that it was in contravention of Section 18, Article II, of the Constitution requiring an officer to attend personally to his duties, and that it violated Section 30, Article II, of the Constitution in that it deprived defendant of his liberty without due process of law because he was entitled to be tried by the legally elected judge of the circuit; that said order made by Judge Dearing calling in Judge Smith was null and void and conferred upon the latter no authority to act.

The court, Judge Smith presiding, overruled defendant's motion and objections. Defendant saved exceptions.

Defendant then filed a motion to quash the information on the alleged ground that the order made by Judge Dearing purporting

to appoint J. E. Taylor, Assistant Attorney General, as temporary or acting prosecuting attorney was null and void and insufficient to confer upon said Taylor authority to file the information, and that because of said invalidity of Taylor's appointment the purported information was a nullity. This motion was overruled, defendant saving his exceptions.

The question arising out of the action of Judge Dearing in calling in Judge Smith to hold the court and to try the case and the question of the legality of Mr. Taylor's appointment and his authority to file the information are strongly stressed in defendant's brief and will first receive attention. Further facts bearing upon other points briefed will be stated in connection with the discussion of contentions to which they respectively apply.

I. We take first the question of Judge Dearing's order disqualifying himself and calling in Judge Smith. Section 3648, Revised Statutes 1929 (Mo. Stat. Ann., p. 3202), part of the Criminal Code, enacted pursuant to constitutional authority, Section 29, Article VI, of the State Constitution, provides that "When any indictment or criminal prosecution shall be pending in any circuit or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases; . . . or, third, when the judge is in anywise interested or prejudiced. . . ." Said third subdivision of said section is the only part thereof here involved. By section 3649, Revised Statutes 1929 (Mo. Stat. Ann., p. 3204), it is provided, among other things, that whenever it shall be within the knowledge of the court or judge that any of the causes enumerated in Section 3648 which disqualify him exist, the defendant and the prosecuting attorney, with the concurrence of the court, may agree to elect (which has been construed to mean agree upon) some attorney at law as special judge. Section 3651, Revised Statutes 1929 (Mo. Stat. Ann., p. 3206), provides that when the judge is incompetent to sit for any of the causes mentioned in Section 3648, supra, and no person to try the case will serve when elected as such special judge, the *judge* of said court—not the *court*—(see State v. Gillham, 174 Mo. 671, 74 S. W. 859) shall set the case down for trial and notify and request another circuit or criminal judge to try the case, whose duty it is to appear and hold the court for the trial of the case.

The question of denial of the right to agree upon a special judge, though referred to by defendant in his objection to the assumption of jurisdiction by Judge Smith, is not urged in his brief here. We have held (State v. Newsum, 129 Mo. 154, 31 S. W. 605), that where the judge of a circuit court, being disqualified, calls in the judge of another circuit in a criminal case without the record showing a prior opportunity given to the defendant and the prosecuting attorney to agree upon a special judge, it will be presumed that the judge was

of the opinion that no suitable person to try the case would serve if elected as special judge, or that no competent or suitable person could or would be elected, and the action of the regular judge in calling in another judge, under the circumstances, without waiting to give opportunity for election of a special judge, was approved. That case is applicable to the circumstances of the case at bar. But since that particular objection is not urged in appellant's brief we need not further consider it.

We have also held that when, in a criminal case, the judge of a circuit court requests the judge of another circuit to try the case, no reasons being shown by the record, it will be presumed that statutory reasons existed. [State v. Newsum, supra. See, also, State v. Hosmer, 85 Mo. 553; State v. Hunter, 171 Mo. 435, 440, 71 S. W. 675; State v. Kowertz, 317 Mo. 426, 297 S. W. 358, 360, citing with approval the Newsum case.]

Appellant's contention on this proposition, as we understand his brief, is in substance this: Conceding, as we understand he in effect does, and as we have above held, that if Judge Dearing had stated no reason for calling in Judge Smith his said request would have been sufficient, he insists that since said judge did state that he disqualified on account of appellant being an officer of his court the reason so stated was exclusive, precluding the indulgence of any presumption, and that the reason assigned was not a statutory reason or the equivalent thereof, hence the request was invalid.

As we have said above, it is not necessary that a judge, in disqualifying himself and calling in another judge, shall state of record his reasons for so doing. It is suggested by respondent that that portion of Judge Dearing's order stating his reason for disqualifying himself may be treated as surplusage. We do not so treat it. But if a judge in such situation does state his reasons we do not believe he must do so in the exact words of the statute, though that doubtless would be sufficient. If he states facts from which—applying the argument to the ground of disqualification here involved—interest or prejudice may well be inferred and out of which interest or prejudice might naturally arise, and says that on account of such facts he voluntarily disqualifies himself, we think the presumption may properly be indulged that he did so because he felt interested or biased. Suppose, for example, a judge and a person charged in his court with crime were at the time and had long been intimately associated, say as partners, in extensive and to them important business enterprises, or, contra, that they were bitter and implacable enemies, and in calling in another judge he merely states the facts without saying in the statutory language that he is interested or prejudiced, may it not be reasonably inferred that he did not feel himself in position to preside with that calm and dispassionate impartiality required of a judge? If bias or preju-

dice exists in the mind of the judge it does not matter whether it be in favor of or against the accused. In either event he should not sit in the case. For discussion of this principle see State ex rel. McAllister v. Slate, 278 Mo. 570, 214 S. W. 85. Right, rather than wrong, action is presumed. This principle was applied in State v. Hunter, supra, wherein it was contended that the disqualified judge had called in another judge without first affording the parties opportunity to agree upon a special judge.

In the case of In re Howell and Ewing, 273 Mo. 96, 120, 200 S. W. 65, we said: "Upon the suggestion of prejudice being made . . . the judge, prompted by that sense of delicacy and duty which renders him averse to judicial action upon an intimation of his interest in the matter at issue, will retire and call in another to try the case. . . . Such a course would indicate a high sense of official duty, as well as a dispassionate purpose on the part of the judge to free the case from even an intimation that he could not fairly conduct it."

If, instead of coming from one of the parties, the "suggestion" of prejudice or bias or of "interest in anywise" comes from the conscience of the judge his action should be the same. As was said in State v. Gates, 20 Mo. 401, l. c. side page 403, "It is both the policy and intention of our Legislature to have tribunals for the determination of criminal cases above all suspicion—courts upon whose disinterestedness not only the prisoner but the whole community can repose with entire confidence." We think Judge Dearing's order and request calling in Judge Smith can and should be construed to mean that he felt himself interested or biased within the meaning and intendment of the statute on account of the fact that defendant was an officer of his court. It follows that Judge Smith was vested with authority to try the case.

II. Of the motion to quash the information:
Appellant urges in his brief that Judge Dearing had no authority to request the Attorney General to take charge of the case and to file information therein, because the Attorney General's only authority to act must come from a request by the Governor, and that it does not appear that such request was made; and that the *judge* of a court cannot appoint a special or temporary prosecuting attorney, but it can only be done by the *court*. We take these contentions together.

The motion to quash states as its grounds only that Judge Dearing's order "purporting to appoint the Hon. J. E. Taylor, Assistant Attorney General of Missouri, as temporary or acting prosecuting attorney . . . for the prosecution of this case is null and void and is insufficient in law to confer any authority upon the said J. E. Taylor to file the information in this case, and that as the result of the aforesaid invalidity of the aforesaid purported

appointment of the said J. E. Taylor, the purported information herein filed is a nullity.'' Neither in said motion nor in defendant's exceptions to the court's action in overruling same is there any reference to the now advanced claim that there is no showing that the Governor had requested the Attorney General to act in the case. After the trial and after defendant's motion for new trial had been filed, raising for the first time the question that the Governor had not directed the Attorney General to act, but before said motion had been passed upon by the court, Mr. Taylor, for the State, sought and offered to prove that the Governor had so directed by letter to the Attorney General, which letter, or a copy thereof, he, Taylor, had assumed was in the files of the case. The court, on defendant's objection, refused to hear the evidence, stating in effect that he had ruled on the motion to quash at the inception of the trial and was ''still of the same opinion.'' If defendant, in his motion to quash, had suggested the complaint which he now advances, viz., that the Governor had not directed the Attorney General to act, doubtless the proof later offered by Mr. Taylor would then have been presented. But while that proof was rejected when offered after the trial, we think there is enough in the record to warrant a finding that the Governor had directed the Attorney General to act. In his order of October 9, 1935, above quoted, Judge Dearing stated, ''and it further appearing that *at the request of the Governor of the State of Missouri* on August 12th, 1935, the Attorney General of Missouri, through his assistants made an investigation of said charge;'' etc. Under all the circumstances, and there being nothing in the record tending to impeach that recital, we think a finding that the Governor had requested the Attorney General to act is warranted. Perhaps, even, it might be so presumed, absent any proof either way, on the theory that the law presumes right action, but this we need not decide. If the Attorney General was authorized to act it is not contended that he could not send one of his assistants instead of going himself.

By Section 11273, Revised Statutes 1929 (Mo. Stat. Ann., p. 585), it is provided:

''When directed by the governor, the attorney general, or one of his assistants, shall aid any prosecuting or circuit attorney in the discharge of their respective duties in the trial courts and in examinations before grand juries, and when so directed by the trial court, he may sign indictments in lieu of the prosecuting attorney.''

In State v. Sullivan, 110 Mo. App. 75, 84 S. W. 105, it was held that where the Attorney General has been directed by the Governor to aid the prosecuting attorney in the discharge of his duties he has the right to appear before the grand jury (a secret body) and aid in the examination of witnesses and to advise the grand jury concerning any matter before it.

In State v. Cummins (Mo. App.), 288 S. W. 792, the defendant was prosecuting attorney and was under investigation by a grand jury. The Governor, at the request of the circuit judge, directed the Attorney General to go to Clay County and "appear before and assist in a grand jury examination to be held there in the near future." The Attorney General appeared before the grand jury and signed the indictment which was returned thus: "North T. Gentry, Attorney General of Missouri." He was not directed by the Governor or by the court to sign the indictment and complaint was made on appeal on that ground. The court said:

"While it seems that the court did not make an order directing the Attorney General to sign the indictment, the statute does not require any special formality in making the direction. Having authorized the Attorney General to appear before the grand jury to assist it in its investigation and having accepted without question the indictment of the grand jury with the name of the Attorney General signed thereto and proceeded with the cause as though the Attorney General had been directed to sign the indictment, the action of the court was equivalent to a direction to the Attorney General to sign it. [State v. Duncan, 116 Mo. 288, 307, 22 S. W. 699.] No objection was made to the signing of the indictment, and it is questionable if defendant can now complain in any event."

In connection with the above-quoted statute relating to the Attorney General certain other statutes relating to prosecuting attorneys may be noted. By Section 11318, Revised Statutes 1929 (Mo. Stat. Ann., p. 602), it is provided that the prosecution attorney shall attend and prosecute, on behalf of the State, all cases before justices of the peace, when the State is made a party thereto. Section 11322 provides that when the prosecuting attorney is disqualified by interest, or for other reasons therein stated, "the court having criminal jurisdiction may appoint some other attorney to prosecute, . . ." who, by Section 11324, shall possess the same power as would the regular officer if present and qualified.

In the instant case it was, of course, apparent and indisputable that defendant was disqualified to act for the State. An affidavit had been filed before a justice of the peace charging him with a criminal offense, upon which the law required that a preliminary examination be held. Ordinarily the duty of representing the State in such proceeding would devolve upon the prosecuting attorney but in this case he could not so act. The circuit court was not in session and regularly would not be until some three months later. If in such situation there is no authority vested anywhere for the appointment of some person to act for the State, then, as said in State v. Moxley, 102 Mo. 374, 384, 14 S. W. 969, "it must be confessed that there is a very lame place in our criminal practice."

Section 11273, supra, construed literally, authorizes the Attorney General to "aid" prosecuting attorneys in the discharge of their duties and, when so directed by the trial court, to sign indictments in lieu of the prosecuting attorney. No reason can be seen why the authority to sign an indictment would not apply similarly to an information, under our statutes on criminal procedure. The Attorney General is a sworn officer of the State, charged with, among others, important duties in the enforcement of the criminal laws of the State. The statute, said Section 11273, says that when so directed by the trial court the Attorney General may sign indictments in lieu of the prosecuting attorney, but it does not say that, as a prerequisite to his right to sign he must have been *formally appointed by the court as a special prosecutor* in the case. That authority arises out of the order or request of the Governor directing him to act and out of the necessities of the case—at least if his action is recognized and acquiesced in by the trial court where there is no prosecuting attorney competent to act. We limit our decision on this point to a situation of this kind.

In the case at bar Judge Dearing, before disqualifying and before the information was filed, made an order appointing Mr. Taylor, the assistant designated by the Attorney General pursuant to the Governor's request, to act as representative of the State and to file information herein. Later the *court* (though over defendant's objection) recognized this information and permitted Mr. Taylor to proceed as representative of the State. In view of all this—the Governor's said request to the Attorney General to act, the Attorney General's designation of his assistant, Mr. Taylor, to represent his department, Judge Dearing's order appointing Taylor as prosecutor, and the subsequent action of the *court* recognizing Mr. Taylor as representative of the State, we think the action of the court was tantamount to an appointment of Mr. Taylor by the court as special prosecutor, if such appointment be deemed necessary. We, therefore, think it unnecessary to determine whether or not Judge Dearing's order, standing alone, made as it was by the *judge* in vacation as distinguished from the *court*, would have been sufficient to vest Mr. Taylor with authority to file the information.

It may be argued that in State v. Cummins, supra, no objection was made to the signing of the indictment by the Attorney General as such, while here the defendant, by motion to quash, challenged the Assistant Attorney General's authority to sign and file the information on the ground that Judge Dearing's appointment was ineffectual. The answer is that by overruling the motion to quash, no other ground being stated therein, the court in effect recognized and affirmed Mr. Taylor's authority to represent the State in the prosecution, and such action was still tantamount to an appointment if an appointment was necessary. Under the circumstances shown we

think Mr. Taylor had authority to file the information. We rule this contention against appellant.

The further fact, suggested by appellant, that Taylor signed the information as "Assistant Attorney General" rather than as "special prosecuting attorney" we think makes no difference. He signed officially. By statute, indictments and informations must be signed by the prosecuting attorney. This provision, of course, cannot be applied literally when the prosecuting attorney is disqualified. In the Cummins case the indictment was signed "North T. Gentry, Attorney General of Missouri" and was held sufficient. We think it was rightly so held.

III. Appellant complains that Instruction No. 5 was prejudicially erroneous because of the use of the word "immediately" therein, and that such error was not cured by Instruction No. 6. We copy the instructions, italicizing the word complained of:

"On the right of self-defense the court instructs you that if, when defendant, Joseph L. Huett, shot and wounded the deceased Ruel Hunter, he, the defendant, had reasonable cause to apprehend a design on the part of Ruel Hunter to *immediately* take his life or to inflict upon him some great personal injury, and that to prevent such apprehended injury he shot and wounded the deceased Ruel Hunter, and that at the time he shot and wounded Ruel Hunter he had reasonable cause for believing and did believe that it was necessary for him to shoot and wound Ruel Hunter to protect himself from such apprehended danger, you will, if from the evidence you so find, acquit him on the ground of self-defense. It is not necessary that the danger should have been actual or real, or that the danger should have been impending or about to fall. It is necessary only that the defendant had reasonable ground for believing and did honestly believe the danger to be so. On the other hand, it is not enough that defendant should have so believed; he must have reasonable cause to so believe. Whether he had reasonable cause for so believing you must find from the circumstances given in evidence. If, from that evidence, you should find that the defendant did not have reasonable cause for believing at the time he shot and wounded Ruel Hunter that deceased was about to deprive him of life or inflict upon him much great personal injury, you should not acquit him on the ground of self-defense."

The court instructs the jury that before they can acquit the defendant upon the ground of self-defense, you must believe and find from the evidence that the defendant had reasonable cause to apprehend and did apprehend that Ruel Hunter was about to inflict upon him some great bodily harm, and that such danger was imminent and impending, and unless you so believe you will find the defendant guilty and assess his punishment as provided in these instructions.

"The court instructs the jury that if you find and believe from the evidence that defendant had good reason to believe, from the words, acts and conduct of Ruel Hunter, that said Hunter had a design to do defendant some great personal injury or bodily harm, and that defendant had reasonable cause to believe there was imminent danger that such design was about to be accomplished, then defendant had a right to act on appearances, and to shoot said Hunter to prevent the accomplishment of such design, even though such shooting resulted in the death of said Hunter.

"In this connection, you are further instructed that the law did not require the defendant to retreat or to wait until he was actually attacked, nor was the defendant required to nicely gauge the force used, but that he could use any means for his own protection that appeared reasonably necessary under the circumstances."

Appellant seems to concede, if we understand his argument, that the portions of said Instruction No. 5, wherein the court says, "It is not necessary that the danger should have been actual or real or that 'the danger should have been *impending and about to fall*," and that "If . . . defendant did not have reasonable cause for believing . . . the deceased *was about* to deprive him of life," etc., are correct. That they are correct we have no doubt, in view of repeated rulings of this court approving instructions containing similar expressions as to the necessary imminency or reasonably to be apprehended imminency of danger. For example, in State v. Bushong, 246 S. W. 919, 920, the instruction on self-defense told the jury that if the defendant had reasonable cause to apprehend a design on the part of the deceased to kill him or do him great bodily harm and that there was reasonable cause to apprehend *immediate danger* of such design being carried out, etc., the jury should acquit. We said that the instruction, in substantially the form given, had been frequently approved by this court. The word "imminent" means, according to Webster's New International Dictionary, "threatening to occur immediately; near at hand; impending." The idea that the danger, in order to justify homicide on the ground of self-defense, must be, or must reasonably appear to the person claiming that defense to be, "imminent," "impending" or "about to fall" runs through all our decisions on that subject. It would be a work of supererogation to cite cases. While the use of the word "immediately" in the connection in which it was used in Instruction No. 5 was unnecessary and might well have been omitted (it is generally safer to follow approved forms), yet the instruction as a whole does not misdirect the jury.

Instruction No. 7 told the jury that it was not necessary that they find beyond a reasonable doubt that defendant shot in self-defense but that if they had a reasonable doubt on that issue they should find the defendant not guilty. Reading instructions 5, 6 and 7 to-

gether, as they should be read, there can be no doubt that the instructions on self-defense were fair to defendant and sufficient.

█ IV. It is contended that the court should not have instructed on manslaughter because under the evidence defendant was either guilty of murder or entitled to acquittal on his plea of self-defense. This contention cannot be sustained. Whether or not there was evidence *requiring* submission of manslaughter we need not decide. It is well settled that an indictment charging murder in the first degree includes a charge of manslaughter and Section 4451, Revised Statutes 1929 (Mo. Stat. Ann., p. 3057), provides that a person found guilty of murder in the second degree, or of manslaughter, shall be punished according to the verdict of the jury, although the evidence shows him to be guilty of a higher degree of homicide. In State v. Parker, 321 Mo. 553, 12 S. W. (2d) 428, we held that a defendant, charged with first degree murder, where the evidence tended to show that grade of offense or no crime, could not complain because the court by its instructions submitted murder in the second degree and he was convicted of that offense. So we held in State v. Davis, 321 Mo. 598, 12 S. W. (2d) 426, wherein the defendant was charged with murder in the first degree and convicted of manslaughter. We have frequently so held. Appellant virtually concedes that such is the law as declared by this court in several comparatively recent decisions but challenges the correctness of those decisions and asks that we reconsider and overrule them. We perceive no good reason for so doing.

█ V. In his brief appellant makes the point that two jurors, Chitwood and Mann, had formed and expressed opinions as to defendant's guilt prior to being called as jurors, and had failed to disclose such fact on *voir dire* examination. As to juror Mann the complaint is not preserved in defendant's motion for new trial, therefore is not here for review, but it is so preserved as to Chitwood. Appellant does not elaborate or even refer to this contention in his printed argument, wherein he discusses at length the other points in his brief. However, since the point is made in his brief we have considered it as to juror Chitwood and have carefully examined the record bearing upon that contention. Certain affidavits were filed with the motion for new trial tending to show that Chitwood had formed and expressed an opinion adverse to defendant before being called as a juror. On the hearing of the motion for new trial the court heard evidence pro and con on this question, and overruled the motion, thus indicating a finding against the defendant on the question of fact thus presented. Without further lengthening this opinion we deem it sufficient to say that after examination of the testimony on this point, and in view of the fact

that the trial court saw and heard the witnesses, we cannot say that the court's finding was wrong or that its ruling on ·this question was erroneous. This contention is ruled against appellant.

The foregoing disposes of the contentions presented in appellant's brief. While there was evidence of self-defense in the case, the jury rejected that evidence. The defendant appears to have had a fair and impartial trial and the verdict is supported by substantial evidence. We find no prejudicial error in the record. The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing ·opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.