237 S.W.2d 149 (1951)
STATE
v.
EVANS.
No. 42074.
Supreme Court of Missouri, Division No. 1.
February 12, 1951.
Rehearing Denied March 12, 1951.
Lincoln, Lincoln, Haseltine & Forehand, Harold T. Lincoln, Horace S. Haseltine, and Douglas W. Greene, all of Springfield, for appellant.
J. E. Taylor, Atty. Gen., Will F. Berry, Jr., Asst. Atty. Gen., for respondent.
CONKLING, Presiding Judge.
In the circuit court of Webster County the defendant-appellant was found guilty of assault with intent to kill one Carmen Rainey on purpose with malice aforethought. From the ensuing judgment of imprisonment in the penitentiary for a term of four years she has appealed.
From the record before us it appears that defendant lived in Springfield, Missouri; that on the night of October 19, 1949, she drove to Marshfield, Missouri, entered the Rainey Funeral Home (where Mrs. Rainey was sleeping) and there made an assault upon Mrs. Carmen Rainey with a flash light and a toy pistol. Carmen Rainey was severely beaten.
Defendant testified that since 1944 she had been "keeping company" with Rex Rainey, the husband of Carmen Rainey; that Mrs. Rainey found out that defendant was "dating" Mr. Rainey; that Rex Rainey and others had communicated to defendant certain threats made against defendant by *150 Carmen Rainey; and that before the occasion in question Rex Rainey suggested to defendant that she go into the Rainey home in Marshfield during his absence and there secure a certain revolver with which Rex Rainey said his wife intended to kill defendant. That trip resulted in the instant assault.
Preparatory to making that trip to Marshfield defendant (at Rex Rainey's suggestion) secured some chloroform, phenobarbital tablets, a stomach pump, and placed red pepper in her shoes. Rex Rainey told defendant where in the house his wife would be sleeping and where the revolver could be found. Those above listed articles and some cotton, an empty cocacola bottle, a plastic table cloth and a jar of vaseline were carried to Marshfield by defendant in the car in a small zipper bag. Defendant testified that when she entered the Rainey home that night she took into the house only "some chloroform and a toy revolver and some cotton" and the clothing she wore. She wore a pair of blue jeans (instead of a skirt) and had on a pair of rubber gloves. After defendant was in the house she poured some chloroform on the cotton.
Defendant testified that Carmen Rainey awoke before defendant could find the revolver. The two scuffled and the assault ensued. They were scuffling and fighting on the floor. Mrs. Rainey bit defendant's fingers. Defendant beat Mrs. Rainey on the head with the toy pistol and a flashlight. Blood flowed from each. Each sustained rather serious injuries. After Mrs. Rainey escaped defendant returned in the car to Springfield. Defendant testified as to what occurred in the house, as did Carmen Rainey.
About five o'clock the following morning defendant drove to the home of Joyce Schroeder in Springfield where she left the small zipper bag and its above noted contents and changed into some clothing of Miss Schroeder's. Defendant gave the zipper bag and her clothing to Miss Schroeder and asked her "to put them away until she (defendant) came and got them, or told me what to do with them, or something." The zipper bag, its contents, the clothing (including the jeans, claimed to have some blood spots thereon) were later turned over by Miss Schroeder to the police, and were introduced in evidence by the state in its case in chief.
Defendant first contends that the trial court committed reversible error in admitting into evidence the empty coca-cola bottle, some phenobarbital tablets, the stomach pump, the plastic table cloth, and the jar of vaseline. Those and other articles were in the zipper bag. This contention is founded upon defendant's argument from the record that while it is not denied that defendant took those items to Marshfield in the small zipper bag, there is no proof at all that those items were ever taken into the Rainey home.
About the detailed preparations made for the trip to Marshfield and her collecting "this bizarre collection of items" defendant testified at great length. She testified, in part:
"Q. What did you do then, in preparation to go out and get the gun? A. Well, he (Rex Rainey) suggested how I go about getting it.
"Q. Well, did you follow those suggestions? A. Yes, I followed them right to the minute.
"Q. What did he suggest? A. He suggested I get some chloroform, and he also suggested some sleeping tablets.
"Q. Now, who produced those sleeping tablets? A. He did.
"Q. What else did he suggest? A. Well, he told me how to use them." Rex Rainey also suggested defendant take a stomach pump and that she have red pepper in her hose. He told her where and how his wife would be sleeping, "he (Rex) gave me a specific picture of the house so that I would know". She secured cotton, a toy revolver, and rubber gloves. Under an assumed name defendant rented a car in Springfield to make the trip to Marshfield.
Defendant further testified: That Rex Rainey had given her the phenobarbital tablets, red pepper and cotton, and had told her to dissolve the tablets in the chloroform;
*151 "Q. Did he tell you how to use it? A. He said to use the stomach pump. * * *
"Q. Well, how, though? A. Well, I guess if you had a tube you could put it down some one's throat, I don't know.
"Q. Did he tell you to do that? A. Yes, sir.
"Q. Did he tell you to run (the rubber tube of) a stomach pump down her throat? A. Well, I think he did, yes.
"Q. Are you sure whether he did or not? A. Why, I am sure he did.
"Q. Did he tell you how many phenobarbital tablets to use? A. Well, he said to use about a dozen * * *
"Q. Now did Mr. Rainey talk to you about getting some vaseline? A. Yes, he told me to.
"Q. And did you get some vaseline? A. Yes, sir.
"Q. What was it to be used for? A. He told me to put it on the tube. * * *
"Q. You say you poured the chloroform on the cotton before you went into the room? A. Yes, sir. * * *
"Q. You testified that you intended to give it (chloroform) to her if she woke up, I believe, is that right? A. Yes, to weaken her defense on me."
The State may show in evidence the preparations made by an accused for the commission of a crime. State v. Miller, 357 Mo. 353, 208 S.W.2d 194. Articles showing motive, or malice, or intent, or knowledge or preparation, may be received in evidence if shown to be connected with the crime or with the accused. 22 C.J.S., Criminal Law, § 709, page 1204, and cases there cited. Generally, demonstrative evidence such as articles which tend to establish the crime charged, or connect the accused with the offense, or explain the intention of accused, or give the jury a more accurate impression of the facts or throw any relevant light upon any material matter are admissible in evidence. State v. Shawley, 334 Mo. 352, 67 S.W.2d 74; 22 C.J.S., Criminal Law, § 708, page 1202. Articles which serve to unfold or explain a crime are admissible in evidence if properly identified as having been had by the accused for that purpose. 22 C.J.S., Criminal Law § 709, page 1203.
The record does not clearly show why the empty coca-cola bottle and the plastic table cloth were offered and admitted in evidence. But if it was error (which we do not rule) to admit those two articles into evidence, the admission of them clearly was not reversible error. There was nothing either lethal or inflammatory or prejudicial about them and their admission could not have been prejudicial to defendant.
Under the peculiar facts appearing in the record before us the collection, possession and taking to Marshfield of these widely varied and strikingly unusual articles to accomplish no more than the larceny of a revolver presents a situation the jury could have (and perhaps did) consider as fanciful. From all the circumstances the jury could well have found that the purpose of this nocturnal entry into the Rainey home by this defendant was something other than larceny. The elaborate preparations for this entry into Carmen Rainey's bedroom plainly revealed to the jury the extent of the scheme and plan the defendant had evolved to carry out some unlawful purpose upon her entry into the Rainey home. The jury had a right to believe that, ordinarily, a person intent upon only the larceny of a revolver does not accomplish that result with chloroform, sleeping tablets and a stomach pump. The jury had the further right to find and believe that those articles were indicative of intended violence upon a human being. We rule that under the instant circumstances the articles in question were admissible as showing both malice and intent. They were clearly connected with accused, connected the accused with the offense, tended to shed light upon her intention in going to the scene of the assault and served to explain and unfold her design and purpose. We have carefully examined State v. Smith, 357 Mo. 467, 209 S.W.2d 138, and State v. Wynne, 353 Mo. 276, 182 S.W.2d 294, cited by defendant. They do not rule this case and the facts of those cases clearly distinguish them. The trial *152 court did not err in admitting the exhibits in evidence.
It is next contended by defendant that the admission in evidence of the "blue jeans", T shirt and sox which defendant had worn at Marshfield on October 19, 1949 was reversible error. With this contention we do not agree.
We have carefully read the transcript. No undue emphasis was placed on the offer or reception in evidence of these exhibits. Defendant's clothing was not mentioned by the Prosecuting Attorney in his argument to the jury. The above articles of clothing were filed here as exhibits. A few small and barely discernible red spots appear on the "blue jeans". This situation is wholly unlike the one which we ruled in State v. Pearson, Mo.Sup., 270 S.W. 347, cited by defendant, wherein bloody garments were repeatedly and dramatically paraded before the jury and used in the State's closing argument to fan the flames of prejudice against the defendant. Defendant was here clothed with a presumption of innocence. When the clothing was offered in evidence it was then unknown whether she would testify. Defendant had sought to hide the clothing she wore at Marshfield, having given them to Miss Schroeder with instructions to put them away until defendant told Miss Schroeder what to do with them. Defendant sought also to conceal the fact that she had been in Marshfield that night. The State may show the circumstances surrounding an offense, including the clothes defendant wore when there is an issue upon which they may shed light. State v. Shawley, supra; 22 C.J.S., Criminal Law, § 713. These exhibits were properly admitted and we find nothing at all in their admission which could possibly have prejudiced defendant's cause.
Defendant finally contends that we should reverse the judgment for the giving of instruction 9. This instruction fully submitted defendant's right of self-defense. It authorized and predicated the acquittal of defendant if, under the facts and situations therein clearly set out, the jury found the assault by defendant, if any, "was justifiable upon the ground of self-defense."
Defendant's specific objection to the instruction is that the last short paragraph thereof is vague, confusing and deprives defendant of her defense of self-defense. That last paragraph of instruction 9, briefly told the jury that if defendant sought or brought on the assault upon the prosecuting witness by any willful act of her own, that the jury "is not authorized to acquit defendant on the ground of self-defense". The instruction is neither vague nor confusing. This last paragraph of instruction 9 must be read with the three preceding paragraphs of instruction 9, and with all the other instructions. State v. Sapp, 356 Mo. 705, 203 S.W.2d 425; State v. Huett, 340 Mo. 934, 104 S.W.2d 252. Particularly all self-defense instructions must be considered together. State v. Huett, supra.
The court also gave instruction 9-A, which was as follows: "The Court instructs the jury that if you find and believe from the evidence that the prosecuting witness, Carmen Rainey, clamped the fingers of Mary Margaret Evans in her teeth, if you so find, and if you further find that thereafter Mary Margaret Evans attempted to get away, if you so find, and if you further find that she was prevented from getting away because her fingers were being clamped by the teeth of the prosecuting witness, Carmen Rainey, if you so find, then you are instructed that Mary Margaret Evans had the right to use such force as appeared reasonably necessary to free her fingers from the teeth of Carmen Rainey, and if you further find that the blows referred to in the evidence were struck in an attempt to free her fingers, if you so find, then your verdict must be `not guilty.'"
Instruction 9-A is obviously founded upon defendant's testimony. She testified, in part:
"Q. Shortly after the struggle started, tell the jury what was done with your fingers. A. She had my fingers in her mouth.
*153 "Q. The fingers of what hand? A. My left hand; biting just as hard as she could.
"Q. Did you try to pull loose? A. Yes, I did.
"Q. Could you pull loose? A. No. * * *
"Q. Well, what were you going to do when you got loose? A. I was going to run. * * *
"Q. Now tell the jury why you hit her with it (flashlight)? A. To make her turn my fingers loose.
"Q. For what purpose? A. So I could get away. * * *
"Q. What did you do relative to this toy cap pistol? A. Well, I didn't have anything to hit her with, to try to release my fingers, so I pulled out this little gun and started hitting her with that. * * *
"Q. I will ask you whether or not, when she finally let loose of your fingers, whether or not you hit her a single time? A. No, sir.
"Q. When she finally let loose of your fingers, what did you do? A. I ran, because I was afraid she would go take that gun and shoot me."
As noted above, instruction 9-A authorized a verdict of "not guilty" if the jury found the very facts defendant testified to and relies upon for her self-defense. An acquittal of defendant was correctly predicated in each of the two self-defense instructions.
Defendant's contention that the instruction withdraws the right of self-defense is without merit. In State v. Mayberry, Mo.Sup., 226 S.W.2d 725, cited by defendant, there was no such instruction as 9-A in this case. No instruction in that case served the purpose which instruction 9-A here serves. We think the instructions in this case were quite favorable to defendant. The court instructed not only on the offense of which defendant was found guilty; the jury were also instructed upon assault with intent to kill without malice aforethought, felonious wounding, common assault and self-defense. The Attorney General's brief makes the suggestion that defendant forfeited all right to any self-defense instruction because she "went into the residence of the prosecuting witness in the nighttime carrying a flashlight, a bottle of chloroform and a toy cap pistol, with the avowed purpose of" committing an offense. But that matter is not before us and we do not rule it. But we do rule that the self-defense instructions as given were neither erroneous nor deficient in any respect. We rule the contentions made against instruction 9 against defendant.
We have examined the record proper. It is not deficient in any respect. The judgment of the circuit court is affirmed. It is so ordered.
All concur.